(11/16) U.S. [E]QUAL EMPLOYMENT OPPORTUNITY COM[MIS]SION

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

**To:** **[L]ana Moore**
**18616 Lappans Road**
**Boonsboro, MD 21713**

From: **Baltimore Field Office**
**G.H. Fallon Federal Building**
**31 Hopkins Plaza, Suite 1432**
**Baltimore, MD 21201**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **531-2016-00918** | **Janel S. Griffin, Investigator** | **(410) 209-2228** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Rosemarie Rhodes,**
**Director**

OCT 31 2018
*(Date Mailed)*

Enclosures(s)

cc:

**Linda Mason**
**EEO Investigator**
**BALTIMORE CITY PUBLIC SCHOOLS**
**Office Of Equal Employment Oppor. & Title Ix Compliance**
**200 E. North Avenue, Room 208**
**Baltimore, MD 21202**

**Kathleen Cahill, Esq.**
**LAW OFFICES OF KATHLEEN CAHILL LLC**
**15 East Chesapeake Avenue**
**Towson, MD 21286**

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS -- Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

## IMPORTANT NOTICE

## REGARDING YOUR PRIVATE SUIT RIGHTS

Should you wish to obtain a copy of the administrative file for this charge, please write to the following address to make such a request. You must do so within the above referenced 90-day period, which can be extended if you do file a lawsuit in court concerning this matter. Please be advised that there may be a fee if you make such a request for file disclosure. Furthermore, please note that failure to received requested documents in a timely manner does not extend the time-period for filing a lawsuit.

File Disclosure Unit
EEOC-Philadelphia District Office
801 Market Street, Suite 1300
Philadelphia, PA 19107

or

email: philfoia@eeoc.gov

# TABLE OF CONTENTS

**FIELD OFFICE WORK PRODUCT** TAB A

Conciliation/Settlement Agreement............................................................................
Case Closure Letters/Supporting Documents...............................................................
Investigator Memorandum, Case Closure Recommendations.........................................
Internal Memos.........................................................................................................
Investigative Plan.......................................................................................................

**JURISDICATIONAL ITEMS** TAB B

Charge Form or Initial Docket Correspondence..........................................................
Amended/Perfected Charge Form(s) .........................................................................
Form 131/131A, Notice Of Charge..............................................................................
Notice of Mandatory Conciliation Attempt.................................................................
Form 212 Or Other Charge Transmittal Documents....................................................
FEPA Closure/Waiver Documents..............................................................................
Notification To Charging Part Of Charge Docketing....................................................

**CHARGING PARTY INFORMATION** TAB C

Charging Party's Statements/Correspondence.............................................................
 Form 283 Intake Questionnaire.............................................................................
 Affidavit.................................................................................................................
 Other Intake Notes/Interview Statements...............................................................
 Post-Intake Interview Statements..........................................................................
 Correspondence To/From Charging Party And/Or Charging Party Attorney.................
 PDI..........................................................................................................................
Documents Submitted By Charging Party.....................................................................
Affidavits/Interviews/Statements Or Witnesses Identified By
 Charging Party (Unless Marked Confidential")........................................................

**RESPONDENT'S EVIDENCE** TAB D

Respondent's Position Statement and Response")........................................................
 Respondent's Position Statement with Attachments (If Separately Submitted Document)......
Initial RFI and Response..............................................................................................
Follow-Up RFI And Response.......................................................................................
PDI With Respondent...................................................................................................
Respondent Documents (If Submitted At FFC Onsite Or In Response To Verbal RFI)..................
Affidavits/Interviews/Statements Or Witnesses Identified By
 Respondent Party (Unless Marked Confidential")........................................................

**OTHER EVIDECNE/MISCELLANEOUS MATERIALS** TAB E

 Open Janel

EEOC Form 212-A (3/98)

# U.S. Equal Employment Opportunity Commission

TO: **Baltimore Community Relations Commission**
**7 East Redwood Street**
**9th Floor**
**Baltimore, MD 21202**

RECEIVED
SEP 06 2016
Office of Civil Rights & Wage Enforcement
Community Relations Commission

Date

EEOC Charge No.
**531-2016-00918C**

FEPA Charge No.
E16C238

CHARGE TRANSMITTAL

SUBJECT:

**Lana Moore** v. **BALTIMORE CITY PUBLIC SCHOOLS**
*Charging Party* — *Respondent*

Transmitted herewith is a charge of employment discrimination initially received by the:

☒ EEOC ☐ ________ (*Name of FEPA*) on **Mar 01, 2016** (*Date of Receipt*)

☒ Pursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC.

☐ Pursuant to the worksharing agreement, this charge is to be initially investigated by the FEPA.

☐ The worksharing agreement does not determine which agency is to initially investigate the charge.

☐ EEOC requests a waiver ☐ FEPA waives

☐ No waiver requested ☐ FEPA will investigate the charge initially

*Please complete the bottom portion of this form to acknowledge the receipt of the charge and, where appropriate, to indicate whether the Agency will initially investigate the charge.*

| Typed Name and Title of EEOC or FEPA Official | Signature/Initials |
|---|---|
| **Rosemarie Rhodes, Director** | [signature] |

**Lana Moore** v. **BALTIMORE CITY PUBLIC SCHOOLS**
*Charging Party* — *Respondent*

TO WHOM IT MAY CONCERN:

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to initially investigate the charge.

☒ This will acknowledge receipt of the referenced charge and indicate this Agency's intention not to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and request a waiver of initial investigation by the receiving agency.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to dismiss/close/not docket the charge for the following reasons:

| Typed Name and Title of EEOC or FEPA Official | Signature/Initials |
|---|---|
| **Kisha A. Brown, Director** | |

TO: **Baltimore Field Office**
**10 South Howard St**
**3rd Floor**
**Baltimore, MD 21201**

Date

EEOC Charge No.
**531-2016-00918C**

FEPA Charge No.
E16C238

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Baltimore Field Office- Mediation Program**

10 S. Howard Street, 3rd Floor
Baltimore, MD 21202
(410) 209-2753
TTY (410) 209-2245
FAX (410) 209-2226

# MEDIATION INVITATION RESPONSE FORM

PLEASE RESPOND TO THIS INVITATION BY COMPLETING THE APPROPRIATE OPTION BELOW AND RETURNING THIS FORM BY MAIL OR FACSIMILE WITHIN TEN (10) CALENDAR DAYS OF RECIEPT.

________________________________________________________
Charge Number & Case Name

You are hereby invited to participate in the Equal Employment Opportunity Commission's Mediation Program. As explained in the attached information sheet, we are making available this effective, neutral and confidential process to respondents and charging parties as a highly desirable alternative to the investigation and possible litigation of employment disputes. If you agree to participate in mediation, it is not necessary to respond to the charge and/or to any request for information at this time. The response will be suspended until the completion of mediation. If you choose not to take advantage of utilizing this highly popular process, you must respond to the charge and/or any request for information by the date specified in the Notice of Charge of Discrimination.

Please return this form to:

Samantha Watts, Federal Mediator
Baltimore Field Office
Equal Employment Opportunity Commission
10 S. Howard Street, 3rd Floor
Baltimore, MD 21202
Samantha.Watts@eeoc.gov
Fax: 410-209-2226

( ) The Respondent would like to participate in the mediation program

Provide 3 Proposed Dates (Within 45 Calendar Days):____________ ____________ ____________

Name(s) of Attendees:________________________________________

( ) The Respondent declines to participate in the mediation program
If you decline to participate in the mediation program, the ADR Coordinator would appreciate you stating the reason for declining. This information will be used for program evaluation purposes only.

________________________________________________________
On behalf of Respondent (Please Print Clearly):

Name:____________________________ Title:________________________

Street Address:________________________________________________

City, State & Zip:______________________________________________

Telephone: ________________ Fax: ________________

E-mail: ________________________________

| | | |
|---|---|---|
| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | AGENCY<br>FEPA<br>XEEOC | CHARGE NUMBER<br>531-2016-00918 |

Md Commission Human Relations

and EEOC

*State or local Agency, if any*

| | | |
|---|---|---|
| NAME *(Indicate Mr., Ms., Mrs.)*<br>LANA MOORE<br>*AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED* | HOME TELEPHONE *(Include Area Code)*<br>301-582-2055 | |
| STREET ADDRESS<br>18616 Lappans Road, Boonsboro, Md 21713 | CITY, STATE, AND ZIP CODE | DATE OF BIRTH<br>2/4/49 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| | | |
|---|---|---|
| NAME<br>Baltimore City & Baltimore City Public Schools | NUMBER OF EMPLOYEES, MEMBERS<br>500+ | TELEPHONE *(Include Area Code)*<br>410-396-8542 |
| STREET ADDRESS<br>200 E. North Ave, Baltimore, Md 21204 | CITY, STATE, AND ZIP CODE | COUNTY<br>Baltimore |
| NAME | TELEPHONE NUMBER *(Include Area Code)* | |
| STREET ADDRESS | CITY, STATE, AND ZIP CODE | COUNTY |

| | |
|---|---|
| CAUSE OF DISCRIMINATION BASED ON<br>*(Check appropriate box(es))*<br>XRACE COLOR XSEX<br>RELIGION XAGE<br>XRETALIATION<br>NATIONAL ORIGIN<br>DISABILITY<br>OTHER *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>*EARLIEST (ADEA/EPA) (ALL)* *LATEST*<br>June 1, 2015 – to date<br>X CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

***SEE ALSO ATTACHED SWORN STATEMENT***

I. I am 65 years of age and have been an educator or education administrator for 43 years. I hold a Doctorate Degree in Educational Leadership and an MSDE endorsement to be a Superintendent of Schools. Over my 43 year career, I have served as a teacher, an assistant principal, a principal (BCPS), and a network facilitator (BCPS).

II. I began my employment with the above-named Respondent in 2010 as a principal of a high school. Subsequently, I held the position of network facilitator.

III. At all times, I performed my job duties with commitment and distinction.

IV. On or about May 30, 2015, I was notified that my position would be eliminated as part of a system-wide reorganization, and that I was able to apply for new positions created in the reorganization.

V. On June 1, 2015, Respondent began the process of posting newly created and open positions for competitive applications.

VI. Starting in June 2015, I applied for numerous positions for which I was highly qualified. Most importantly, among the applications, I applied for my former position, which had a title change.

VII. One senior administrator, Theodore Thompson PhD, the Deputy Chief Academic Officer, was central to the interview and selection process. Dr. Thompson was well known for favorable treatment of young African-American female employees, and one group in particular, some of whom he also purportedly had personal relationships with. Dr. Thompson also was known to treat older women less favorably, particularly women whom he viewed as challenging him.

VIII. By mid-July 2015, it became apparent to me that I was being denied positions for which I was highly qualified, and that the positions were being awarded to Dr. Thompson's favored group of female subordinates, who were less qualified than I was.

IX. I complained to the EEO officer on or about July 17, 2015.

X. Thereafter, I continued to apply for numerous jobs for which I was well-qualified. Yet, I continued to be denied positions for which I was the most qualified applicant. In some instances, I was not even interviewed for positions for which I had applied and was inarguably highly qualified.

XI. Based on that, I amended my internal EEO complaint to include retaliation.

XII. On December 7, 2015, Respondent found against me on my internal EEO complaint.

XIII. To date I have applied for approximately 22 positions, for which I have been highly qualified. I have yet to be hired, while many younger and/or less qualified applicants have been awarded positions. Since my internal EEO complaint was closed, I have not had one interview even though I have been deemed eligible for interviews by meeting the qualifications of the positions.

XIV. Upon information and belief, Dr. Thompson was the subject of multiple complaints of gender discrimination and related misconduct, leading to a broad investigation and his separation from employment with Respondent in the fall of 2015.

XV. Throughout my career my performance has been very good or excellent, and I have done nothing to warrant such outrageous treatment.

XVI. I have been subjected to discrimination and retaliation in violation of Title VII and the Age Discrimination in Employment Act.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements)<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br>Lana L. Moore<br>Lana L. Moore 3/1/16<br>Charging Party<br>*(Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(day, month, and year) |

**AFFIDAVIT OF COMPLAINANT LANA MOORE**

**IN SUPPORT OF EEOC CHARGE OF DISCRIMINATION**

Now comes Charging Party Lana Moore and attests as follows:

1. I am 67 years of age and have been an educator or education administrator for 45 years. I hold a Doctorate Degree in Educational Leadership and an MSDE endorsement to be a Superintendent of Schools. Over my 45-year career, I have served as a teacher, an assistant principal, a principal (at both the high school and the middle school level), and as a network facilitator, among other positions.

2. I began my employment with Baltimore City Public Schools in 2010 as a principal of a high school. I was hired through a lengthy competitive process and based on multiple interviews. I served a very successful two years as a high school principal, and I was then promoted through another competitive process, including interviews, to the position of Network Facilitator supporting 14 elementary school principals throughout the system.

3. At all times, I performed my job duties with commitment and distinction and received favorable reviews.

4. On or about May 30, 2015, I was notified that my position would be eliminated as part of a system-wide reorganization, and that I was able to apply for new positions created in the reorganization.

5. Starting immediately, I applied for numerous positions posted for competitive applications for which I was qualified or highly qualified.

6. Most importantly, among those positions, I immediately applied for the position that was almost identical to my former position, with only a title change. There were five slots for the newly-created position of "Manager-School Operations Support" (#3828). (Exhibit C inaccurately shows I applied on 8/3/15. In fact, I applied in the early days of June, as soon as it was posted.)

7. On or about June 9, 2015, I was stunned to hear that the interviews had already taken place the prior day for the five "Manager-School Operations Support" positions (#3828), and that those interviewed on

June 8 were told by the Hiring Manager, Theodore Thompson PhD, the Deputy Chief Academic Officer, that they would get the decision the next day, June 9. I then found out that of the five applicants, I was the only one not interviewed. Yet I knew I was more qualified than any of the other applicants.

8. I immediately complained to human resources (called "Human Capital") about that development, as I knew the policy required that all qualified applicants must be interviewed and that there could be no legitimate reason to exclude me.

9. I was later advised by human resources that the Hiring Manager, Dr. Thompson, had been questioned and had agreed to interview me.

10. So on June 11, 2015, I was interviewed, but not by the same team as had interviewed the other applicants on June 8, 2015.

11. On June 12, 2015, there was then a second round of interviews for those positions. My interview was very brief. Dr. Thompson, the leader of the panel, actually took two telephone calls during the course of my very brief interview.

12. The next day, on June 13, 2015, the same five people interviewed back on June 6 were advised they were selected. I was not.

13. I believe the whole interview process precipitated by my complaint was a sham. My complaint to human resources interrupted Dr. Thompson's timeline, but it did not change his decision to wholly omit me from the process, and from legitimate, equitable, and fair consideration based on my qualifications and experience. Dr. Thompson made it clear that he was interviewing me under protest.

14. I complained to human resources promptly and then formally to the EEO officer on or about July 17, 2015.

15. A couple of weeks later, one of the five selectees for "Manager-School Operations Support " opted for a different position instead. But rather than offering me the position, as the only other applicant, the slot was reposted. I applied again. (That might be the source of the 8/3/15 date for my application on Exhibit C).

16. To add insult to injury, in that round too, the one new applicant was selected over me, despite being less experienced and qualified (Mr. Henry, age 37). (Note, Exhibit C omits applicant Lisa Brown, who is the person who applied in June, was selected, but then declined the position. Instead, it lists only Harold Henry, who is the new applicant

for the August reposting. That also explains why there is only one score listed for him and "NIF" for the other round.)

17. But most insulting was the fact that Dr. Thompson comprised my August interview panel (there was only one round of interviews that time, for some unknown reason) from three of the women previously selected by him over me in June, and who I had identified in my EEO complaint as being less qualified and wrongfully hired over me. I was so unnerved by this development that in a panic, I actually asked to record my interview, but that was declined. No doubt, the scores for that interview cannot be credited given all those circumstances. (Exhibit C shows only two interview scores for me for "Manager-School Operations Support," but I interviewed three times, June 11, June 12, and in August.)

18. The main duty for the "Manager-School Operations Support "position was to support the schools' principals with regard to the school climate (student incidents and safety plan), academics (attendance and delivery of instruction), and allocation of school resources (preparation and planning of school budget). Dr. Thompson had advised me that they would appoint three Managers to support elementary schools and two Managers to support high schools.

19. I was the only candidate who had actually been a principal of a Baltimore City High School. I was the only candidate who had written a safety plan for a Baltimore City High School. I was the only candidate who prepared and implemented a budget for a Baltimore City High School. I was the only candidate who had developed and implemented numerous climate strategies to remove a Baltimore City High School from the state's "most dangerous list." I was the only candidate who had a Doctorate Degree in Educational Leadership. I was the only candidate who had an Administrator's I & II Certificate in addition to a Superintendent's Certificate.

20. I am hampered in that I am not privy to the personnel files of other applicants, but I do have some information about my comparators. Most glaring among the inequitable selections was Beshon Trusty-Smith (age 42). Ms. Trusty-Smith had less seniority in the school system than I did, she had never been a facilitator, she did not have an advanced degree in education, she had never held a school-based position in the system. Of the other selectees, Ms. Lugay (age 32) had one year of experience in administration as a facilitator, Ms. Walton (age 35) had approximately two and a half years in administration as a facilitator and had never been a principal, Ms. Brown (age unknown) had never been a principal, and Ms. Smith (age 33) had only one year experience as a facilitator. (I had three years' experience as a successful

facilitator.)

21. Thereafter, I continued to apply for numerous jobs for which I was well-qualified. Yet, I continued to be denied positions for which I was the most qualified applicant. In some instances, I was not even interviewed for positions for which I had applied and was inarguably highly qualified, in violation of policy requiring that all qualified applicants be interviewed.

22. Based on that the alarming pattern of being treated adversely with regard to many applications, I amended my internal EEO complaint to include retaliation.

23. I have been advised over and over by human resources that it is my interview scores that have impeded my selection. However, that subjective element could not possibly be the true cause. After all, I was interviewed multiple times successfully to be hired into the system in 2010 for a senior position, I was promoted once after that, including based on my successful interview, and I was never criticized or disciplined for any alleged oral communication issues. It was only after Dr. Thompson cut me out of the key "Manager-School Operations Support" selection process and I complained that I suddenly received such low interview scores. Some are glaringly low: for example, as to the ILED (#3822) panel led by Dr. Thompson, the selectees' scores were 84, 76, 70, 66, 65, 64 and 62 – my score was 26.

24. Upon information and belief, Dr. Thompson was the subject of multiple complaints of gender discrimination and related misconduct, leading to a broad investigation and his separation from employment with Respondent in the fall of 2015. Dr. Thompson was well known for favorable treatment of young African-American female employees, and one group in particular, some of whom he selected over me despite their inferior qualifications and experience. Dr. Thompson also was known to treat older women less favorably, particularly women whom he viewed as challenging him.

25. To date I have applied for approximately twenty positions, for which I have been highly qualified. I have yet to be hired, while many younger and/or less qualified applicants, and those who did not complain of discrimination, have been awarded positions.

26. There have been numerous other irregularities and deviations from policy in the treatment of my applications. There also is incomplete or inaccurate information proffered in the Schools' Position Statement

and Exhibit C.

27. For example, with regard to the position "Coordinator – Prevention/Intervention, Training & Support" (#3835) there is evidence of discriminatory treatment: that position was awarded again without me being interviewed at all, in violation of policy. I learned of the selection and complained to human resources, who advised me I was to be interviewed because I was qualified. But that time there was not even the sham of a "do-over" round. That time too, it was Dr. Thompson who ran that panel and selection process. Notably, the Schools' claim in their submission that they cannot find my interview score ("NIF"), but that is because there was no interview. The selectee was a 34 year old, who apparently was interviewed twice.

28. With regard to Academic Content Liaison position (#3991), there is evidence of discriminatory treatment: it appears according to Exhibit C that I was the sole applicant. They show no interview score, but I was in fact interviewed on September 10, 2015 at 4:00 pm, and was told I was moving to the next round, a writing assignment. That never occurred. Now they represent that the position was not awarded ("HOLD"). But I know for a fact that is a "mission-critical" position that would not be left vacant – I also know that at present it is occupied by Tonya Carter, although I do not have access to information as to when she got the position.

29. With regard to the Educational Specialist II – Strategic Climate Support position (#3813), there is evidence of discriminatory treatment: there were four people selected, ages 44, 35, 35, and 49. Exhibit C shows I applied the very first day, June 1, 2015, was deemed eligible, but was not interviewed. That in and of itself would be suspect. But the fact is, I *did* interview on June 9, 2015, with Drs. Everett Garnett and Andre Bundley and it was a very vibrant and successful interview. It must be that my scores were intercepted or just disappeared. In fact, I even received subsequent support and assistance from Dr. Garnett, who wrote that, based on that interview "I will never forget you."

30. Last but not least, I interviewed in March 2017 for an Educational Associate position (#5091). A human resources representative attended to monitor the interview. I received the highest score, but I was passed over for selection. My score that day was 82 – in contrast to the other scores attributed to me in Exhibit C, 21, 26, and 57/16 – of course, not including the missing favorable score from the June 9, 2015, with Drs. Everett Garnett and Andre Bundley.

31. Throughout my career my performance has been very good or excellent, and I have done nothing to warrant such outrageous

discriminatory treatment.

32. I have been subjected to discrimination and retaliation in violation of Title VII and the Age Discrimination in Employment Act.

I solemnly affirm under the penalties of perjury that the contents of this Affidavit are true to the best of my knowledge, information and belief.

Lana L. Moore Ed. D. September 28, 2017

**JANEL GRIFFIN**

| | |
|---|---|
| **From:** | JANEL GRIFFIN |
| **Sent:** | Thursday, September 21, 2017 3:15 PM |
| **To:** | 'kathleen.cahill1@gmail.com' |
| **Subject:** | FW: Moore v. Balto City Schools - 531-2016-00918C |
| **Attachments:** | L. Moore Exhibit C.pdf; L. Moore Exhibit F.pdf; L. Moore Exhibit G.pdf |

Ms. Cahill:

I realized today that we have not yet received the rebuttal for the above referenced case.

Please submit a written rebuttal on or before September 28, 2017. If you fail to submit a rebuttal, a decision will be made based on the evidence that we have thus far, which may result in the dismissal of your client's case.

Thank you.

Janel Griffin
Investigator
410-209-2228
Janel.griffin@eeoc.gov

**From:** JANEL GRIFFIN
**Sent:** Tuesday, August 15, 2017 3:32 PM
**To:** 'kathleen cahill' <kathleen@kathleencahill-law.com>
**Subject:** RE: Moore v. Balto City Schools - 531-2016-00918C

Dear Ms. Cahill:

I have attached the exhibits provided with the position statement which can hopefully assist your client in providing her rebuttal.

Sincerely,
Janel Griffin
Investigator

**From:** kathleen.cahill1@gmail.com [mailto:kathleen.cahill1@gmail.com] **On Behalf Of** kathleen cahill
**Sent:** Monday, August 14, 2017 10:26 AM
**To:** JANEL GRIFFIN <JANEL.GRIFFIN@EEOC.GOV>
**Subject:** Moore v. Balto City Schools - 531-2016-00918C

Ms Griffin, we are requesting additional information about interview referenced in #11 of the BCPS Position Statement. We need to know the date of the interview on which Ms Moore reportedly scored

**JANEL GRIFFIN**

| | |
|---|---|
| **From:** | Kathleen Cahill <kathleen@kathleencahill-law.com> |
| **Sent:** | Friday, October 12, 2018 10:21 AM |
| **To:** | JANEL GRIFFIN |
| **Subject:** | Re: EEOC Charge 531-2016-00918 Lana Moore v. Baltimore City Public Schools (Update) |

Ms. Griffin, while we respectfully disagree with the apparent depth of review of the evidence and the interpretation of the evidence you have laid out, Ms. Moore has decided to request the Notice of Right to Sue. Thank you, Kathleen

On Mon, Oct 1, 2018 at 12:48 PM JANEL GRIFFIN <JANEL.GRIFFIN@eeoc.gov> wrote:

Dear Ms. Cahill:

We have reviewed the information provided by both your client and the employer, hereafter referred to as "Respondent".

Your client alleged that she was not hired and was denied several promotional opportunities because of her age, race, sex and in retaliation for complaining in violation of the ADEA, as Amended, and in violation of Title VII, As Amended.

Respondent denies your client's allegations and maintains the following position:

After the Charging Party's position was eliminated based on a companywide reorganization, she applied for several vacancies that ultimately became available. Out of the twenty-seven positions that the Charging Party applied for, she was interviewed for thirteen of them. Charging Party was not interviewed for fourteen of the available positions because the position was filled prior to the Charging Party being interviewed, the position was either eliminated or filled by someone better qualified. Selections were based on interview scores and how each candidate performed during the interview regardless of their age, race or sex.

Evidence provided shows that at least six applicants selected for the positions for which Charging Party expressed interest are also white. For those positions in which a candidate outside of the Charging Party's race was selected, the selectee scored higher during the interview process. Additionally, multiple applicants selected for the positions that Charging Party interviewed are female, but they received a higher score during the interview process. Although the Charging Party was the oldest candidate for all positions that she expressed interest in, all of the selectees were of various ages including 40 years and older.

Lastly, the Respondent contends that the Charging Party was not retaliated against because her complaint was concerning her dissatisfaction with Mr. Thompson. Additionally, Respondent maintaines that the Charging Party suffered no harm based on her complaints.

the 57, as well as the identity of the other members of the interview panel. That information is crucial to our submitting an informed rebuttal as to that key issue.
Thank you,
Kathleen Cahill

**Kathleen Cahill | Law Offices of Kathleen Cahill, LLC**
15 East Chesapeake Avenue Towson, Maryland 21286 | (410) 321.6171
www.kathleencahill-law.com

Please Be Green. Read it on-screen.

---

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please contact the sender by reply email and destroy all copies of the original message. To contact our email administrator directly, send to kathleen@kathleencahill-law.com

Thank you.

**JANEL GRIFFIN**

| | |
|---|---|
| **From:** | kathleen.cahill1@gmail.com on behalf of kathleen cahill <kathleen@kathleencahill-law.com> |
| **Sent:** | Tuesday, June 06, 2017 10:00 AM |
| **To:** | JANEL GRIFFIN |
| **Subject:** | Re: Moore v Balto Schools - 531-2016-00918C |

Thank you

**Kathleen Cahill | Law Offices of Kathleen Cahill, LLC**
15 East Chesapeake Avenue Towson, Maryland 21286 | (410) 321.6171
www.kathleencahill-law.com

Please Be Green. Read it on-screen.

---

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please contact the sender by reply email and destroy all copies of the original message. To contact our email administrator directly, send to kathleen@kathleencahill-law.com

Thank you.

On Tue, Jun 6, 2017 at 9:58 AM, JANEL GRIFFIN <JANEL.GRIFFIN@eeoc.gov> wrote:

Good Morning Ms. Cahill:

Your request has been granted.

Janel Griffin

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Baltimore Field Office

City Crescent Building
10 South Howard St., 3rd Floor
Baltimore, MD 21201
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Baltimore Direct Dial: (410) 209-2237
TTY (410) 962-6065
FAX (410) 209-2221
FAX (410) 962-4270
http://www.eeoc.gov

May 26, 2017

Kathleen Cahill ESQ
LAW OFFICES OF KATHLEEN CAHILL LLC
15 East Chesapeake Avenue
Towson, Maryland 21286

Re: EEOC Charge No. 531-2016-00918C
Lana Moore v. Baltimore City Public Schools

Dear Ms. Cahill:

Enclosed is a copy of the position statement (without attachments) received by the employer. Please review it carefully and submit a written rebuttal to be received by this office no later than **June 12, 2017**. Be cognizant that this document is to be kept strictly confidential and is being provided to you at this time for the sole purpose of providing your client the opportunity to provide a rebuttal.

You may submit any other information that has not already been submitted. If you fail to submit a rebuttal, a decision will be made based on the information that has been received by your client and the employer and could possibly result in the dismissal of your client's charge. You can email your response to janel.griffin@eeoc.gov. We ask that you submit your response only once either through email or through the mail. Do not fax your response to us.

Sincerely,

Janel Griffin

Janel S. Griffin
Investigator

Enclosure

**PAMELA LICHTENBERG - Re: Fwd: New Charge - Moore v. Baltimore**

**From:** kathleen cahill <kathleen@kathleencahill-law.com>
**To:** PAMELA LICHTENBERG <PAMELA.LICHTENBERG@eeoc.gov>
**Date:** 3/9/2016 3:52 PM
**Subject:** Re: Fwd: New Charge - Moore v. Baltimore

sorry, caucasian - and the decision-maker and the referenced selectees are african-american

**Kathleen Cahill | Law Offices of Kathleen Cahill, LLC**
15 East Chesapeake Avenue Towson, Maryland 21286 | (410) 321.6171
www.kathleencahill-law.com

Please Be Green. Read it on-screen.

---

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please contact the sender by reply email and destroy all copies of the original message. To contact our email administrator directly, send to kathleen@kathleencahill-law.com

Thank you.

On Wed, Mar 9, 2016 at 3:47 PM, PAMELA LICHTENBERG <PAMELA.LICHTENBERG@eeoc.gov> wrote:

> Ms. Cahill,
> Please provide Ms. Moore's race as you have alleged race discrimination, among other allegations, in the complaint.
> Thank you.
>
> Pamela Lichtenberg
> CR/TIU Sup.
> U.S. EEOC, Baltimore Field Office
> 10 South Howard Street, 3rd Floor
> Baltimore, MD 21201

410 209-2720
410 962-4270 (fax)
Pamela.Lichtenberg@eeoc.gov

>>> kathleen cahill <kathleen@kathleencahill-law.com> 3/8/2016 2:06 PM >>>
Ms Lichtenberg, please confirm that the attached Charge sent to you on March 1, 2016 has been filed. And please share the Charge Number. Thank you, Kathleen

---------- Forwarded message ----------
From: **kathleen cahill** <kathleen@kathleencahill-law.com>
Date: Tue, Mar 1, 2016 at 10:51 AM
Subject: New Charge - Moore v. Baltimore
To: PAMELA LICHTENBERG <PAMELA.LICHTENBERG@eeoc.gov>

Ms. Lichtenberg, attached for filing please find the Charge of Discrimination of Lana Moore against Baltimore City Schools. Unless I hear otherwise, I will consider this electronic filing is sufficient and not follow with the hard copy. Please advise as soon as there is a charge number.
Thank you for your assistance, Kathleen Cahill

**Kathleen Cahill | Law Offices of Kathleen Cahill, LLC**
15 East Chesapeake Avenue Towson, Maryland 21286 | (410) 321.6171
www.kathleencahill-law.com

Please Be Green. Read it on-screen.

---

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please contact the sender by reply email and destroy all copies of the original message. To contact our email administrator directly, send to kathleen@kathleencahill-law.com

Thank you.

**PAMELA LICHTENBERG - New Charge - Moore v. Baltimore**

---

**From:** kathleen cahill <kathleen@kathleencahill-law.com>
**To:** PAMELA LICHTENBERG <PAMELA.LICHTENBERG@eeoc.gov>
**Date:** 3/1/2016 10:51 AM
**Subject:** New Charge - Moore v. Baltimore
**Attachments:** EEOC.Charge.3.1.16.pdf

---

Ms. Lichtenberg, attached for filing please find the Charge of Discrimination of Lana Moore against Baltimore City Schools. Unless I hear otherwise, I will consider this electronic filing is sufficient and not follow with the hard copy. Please advise as soon as there is a charge number.
Thank you for your assistance, Kathleen Cahill

**Kathleen Cahill | Law Offices of Kathleen Cahill, LLC**
15 East Chesapeake Avenue Towson, Maryland 21286 | (410) 321.6171
www.kathleencahill-law.com

Please Be Green. Read it on-screen.

---

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please contact the sender by reply email and destroy all copies of the original message. To contact our email administrator directly, send to kathleen@kathleencahill-law.com

Thank you.

BALTIMORE CITY
PUBLIC SCHOOLS

**Catherine E. Pugh**
*Mayor, City of Baltimore*

**Marnell A. Cooper**
*Chair, Baltimore City Board of School Commissioners*

**Dr. Sonja Brookins Santelises**
*Chief Executive Officer*

May 15, 2017

**VIA UNITED STATES MAIL**
United States Equal Employment Opportunity Commission
Attn: Janel Griffin, Investigator
10 South Howard Street, 3rd Floor
Baltimore, Maryland 21201

Re: Lana Moore v. Baltimore City Public Schools
Charge No.: 531-2016-00918C

Dear Ms. Griffin:

This letter and the accompanying exhibits attached hereto set forth the position of Baltimore City Public Schools (hereinafter "Respondent") with respect to the above-referenced Charge of Discrimination (hereinafter "Charge") filed by Lana Moore (hereinafter "Charging Party"). Charging Party alleges that she was discriminated against due to her race, sex, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Charging Party further alleges that she was discriminated against due to her age in violation of the Age Discrimination in Employment Act ("ADEA"). Respondent unequivocally denies these allegations.

## I. INTRODUCTION

A. The information provided herein is based on Respondent's current understanding of the available evidence. Respondent reserves the right to submit additional relevant information should any additional relevant information be revealed during its continuing investigation into this matter.

B. Respondent's submission of information during the course of the Commission's investigation in no way constitutes a waiver of any available defenses or objections that it may seek to raise at a later time in this or any other proceeding.

C. In accordance with applicable law, the information provided by Respondent during the course of the Commission's investigation shall be treated as sensitive, confidential and not disclosed to any third parties except as required by law.

**FACTUAL BACKGROUND**

A. Respondent's Background

Please be advised that the correct name of the specific installation charged is "The Baltimore City Board of School Commissioners." Respondent is a city-wide public school district that provides education for approximately 85,000 students in the city of Baltimore, Maryland. Respondent employs over 10,000 employees.

Respondent has a nondiscrimination policy in place that "assure[s] all persons equal opportunity in employment…regardless of race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, veteran status, or disability…"(**Exhibit A**). Moreover, the nondiscrimination policy strictly prohibits the failure or refusal "to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges or employment" due to belonging to any protected category. Any employee who has concerns about discrimination in the workplace has the right to contact Respondent's Office of Equal Employment Opportunity and Title IX Compliance to file an EEO Complaint (**Exhibit B**).

B. Charging Party's Employment Background

Charging Party (race: Caucasian, Sex: female, DOB 2-4-1949) began her employment with Respondent on August 25, 2010. She held several position during her tenure; High School Principal, Administrator School of Business and Entrepreneurial and Network Facilitator.
In late 2014, Respondent's Chief Executive Officer, Dr. Gregory Thornton, alerted staff that, due to budgetary reasons, there would be a reduction in force in Baltimore City Public Schools (BCPS) district office. Several positions within the district office were slated for elimination. Additionally, there would be reorganization within the district office resulting in positions being moved to different departments, as well as the creation of new positions to more efficiently address specific needs within the district. Any union unaffiliated City Schools employee whose job was eliminated as a result of the reduction in force would have to engage in the competitive process if he or she was interested in securing an available position within the district. If the affected employee was unable to secure another position with City Schools, he or she would be laid off on the last day of the fiscal year, June 30, 2015. One of the employees affected by the reduction in force was Dr. Lana Moore. The School Support Network Facilitator position she held had been slated for elimination. Therefore, if Dr. Moore wished to remain employed with Respondent she would have to compete for one of the newly posted positions.

## II. RESPONSE TO SPECIFIC ALLEGATIONS IN CHARGE OF DISCRIMINATION

In response to the specific allegations contained within the Charge, Respondent says as follows:

1. "I am 65 years of age and have been an educator or education administrator for 43 years. I hold a Doctorate Degree In Educational Leadership and an MSDE endorsement to be a Superintendent of Schools. Over my 43 year career I have served as a teacher, an assistant principal, a principal (BCPS). I began my employment with the above named Respondent in 2010 as a principal of a high

school. Subsequently, I held the position of network facilitator. At all times, I performed my duties with commitment and distinction."

**2.** Respondent agrees with Charging Party's above statements.

**3.** "On or about May 30, 2015, I was notified that my position would be eliminated as a part of a system-wide reorganization, and I was able to apply for new positions created in the reorganization."

**4.** Respondent agrees that Charging Party was notified during 2014-2015 school year that her position of Network School Facilitator would be eliminated due to a system-wide reorganization and that she could apply for other positions with (BCPS).

**5.** "On June 1, 2015, Respondent began the process of posting newly created and open positions for competitive applications."

**6.** Respondent agrees that the process of posting newly created and vacant positions began on or about June 1, 2015.

**7.** "Starting in June 2015, I applied for numerous positions for which I was highly qualified. Most importantly, among the applications, I applied for my former position, which had a title change."

**8.** Respondent agrees that Charging Party applied for several available positions for which she was deemed an eligible applicant. Respondent's submits that Charging Party was no more "highly qualified" than any other applicant(s). Respondent denies that Charging Party's former position of Network School Facilitator had only undergone a title change and was available to applicants. **(Exhibit D).**

**9.** "One senior administrator, Theodore Thompson PhD, the Deputy Chief Academic Officer, was central to the interview and selection process. Dr. Thompson was well known for favorable treatment of young African American female employees, and one group in particular; some of whom he also purportedly had personal relationships with. Dr. Thompson also was known to treat older women less favorably, particularly women whom he viewed as challenging him."

**10.** Respondent submits that Dr. Theodore Thompson, DOB 6/24/76, former Deputy Chief Academic Officer was on the interview panel of approximately four of the approximately twenty-seven positions that Charging Party has applied for with (BCPS). Dr. Thompson, an African American male and was one of four African American males along with three African American females on the interview panel for the position of Coordinator Prevention and Intervention, I Recruit Control #3835(IRC); for which Charging Party interviewed but was not selected. Charging Party's scores could not be found by Respondent. The successful applicant, a White male, DOB 11/19/80, received combined scores of ( 83 /32) respectively during his first and second interviews and was determined to be the most qualified applicant by seven members of the interview panel. **(Exhibits C/F/G)**

**11.** Dr. Thompson was on the interview panel for the position of Manager School Operations Support (IRC # 3828); for which Charging Party interviewed but was not selected because she received scores of (57/16) during the interviewing process. The successful applicants, an African American male, DOB 1/27/78, scored (78); an African American female, DOB 10/2/71, scored (80/31); an African American female, DOB 3/16/73, scored (64/30); an African American female, DOB 5/22/80, scored (50/34); an African American female, DOB 12/29/83, scored (96/35). The successful applicants were determined to be the most qualified applicants by each members of the interviewing panel. **(Exhibits C/F/G)**

**12.** Dr. Thompson, African American male, was on the interview panel along with a White male, five White females, an African American female and Asian female for the position(s) of ILED-Elementary/Middle (IRC#3822); for which Charging Party was interviewed but was not selected. Charging Party's interview score was (26). The successful applicants included, a White female, DOB 11/3/78, scored (64); an African American female, DOB 2/24/69, scored (65); a White female, DOB 3/26/57, scored (62); an African American male, DOB 11/6/79, scored (84); a White female DOB 1/7/59, scored (66); an Other female, DOB 7/17/76, scored (70); an African American male DOB 11/26/75, scored (76). The successful applicants were determined to be the best qualified applicants by nine (9) members of the interview panel. **(Exhibits C/F/G)**

**13.** Dr. Thompson was one of four African American males and three African American females on the interview panel for the position of Coordinator-Prevention /Intervention Training and Support (IRC#3835); for which Charging Party was interviewed but was not selected. Charging Party's interview score could not be located by the Respondent. The successful applicant, a White Male, DOB 11/19/1980, received interviewing scores of (83/32) respectively for a first and second interview. He was determined to be the best qualified applicant by the seven (7) members of the interview panel. **(Exhibits C/F/G)**

**14.** Respondent denies that Dr. Thompson favored young African American females or that he treated older women less favorably who may have challenged him. Respondent has no knowledge of any personal relationships that Dr. Thompson had with Respondent's staff members.

**15.** "By mid-July 2015, it became apparent to me that I was being denied positions for which I was highly qualified, and that the positions were being awarded to Dr. Thompson's favored group of female subordinates, who were less qualified than I was."

**16.** Respondent denies that any female employees were personally favored by Dr. Thompson. Respondent further denies that any applicant selected for an available position was less qualified than Charging Party. Respondent asserts that all successful applicants were hired or promoted based on eligibility, qualifications, their performance during the interviewing process and subsequently their scores without regard to favorability or any other covered category.

**17.** "I complained to the EEO officer, on or about July 17, 2015 "

**18.** Respondent agrees with Charging Party's above statement. The Charging Party filed an EEO complaint on July 17, 2015; alleging discrimination based on age.

**19.** " I continued to be denied positions for which I was the most qualified applicant. In some instances I was not even interviewed for positions for which I had applied and was inarguably highly qualified."

**20.** Respondent submits that Charging Party applied for approximately twenty-seven (27) available positions, for which she was deemed eligible for consideration but was not selected. When Charging Party was selected to be interviewed she was not the successful applicant. Also, all successful applicants were deemed eligible by the Respondent's Office of Human Capital and were as qualified as the Charging Party.

**21.** Respondent is unable to determine the specific reason(s) Charging Party was not interviewed for each position for which she was deemed eligible to be interviewed. However, Respondent's hiring policy allows the hiring authority to suspend additional interviews once a qualified applicant is chosen. Also, the hiring authority may suspend the recruitment of eligible applicants when a large enough pool of applicants is reached. In addition some of the position(s), for which Charging Party applied were eliminated.

**22.** "Based on that, I amended my internal EEO complaint to include retaliation."

**23.** Respondent agrees that Charging Party filed an internal charge of age discrimination against Dr. Theodore Thompson on July 17, 2015. Charging Party amended the charge to include retaliation against other Respondent staff members during the same time period.

**24.** "On December 7, 2015, Respondent found against me on my internal EEO complaint"

**25.** Respondent agrees that Charging Party's internal investigation was closed on December 3, 2015, Respondent's Investigator concluded that there was no reasonable cause to find that Dr. Thompson discriminated against Charging Party, due to her age or that Respondent's School Operational Support staff retaliated against Charging Party for making a complaint against Dr. Thompson.

**26.** " To date I have applied for approximately 22 positions, for which I have been highly qualified. I have yet to be hired, while many younger and/or less qualified applicants have been awarded positions. Since my internal EEO complaint was closed, I have not had one interview even though I have been deemed eligible for interviews by meeting the qualifications of the positions."

**27.** Respondent submits that Charging Party has applied for approximately twenty-seven positions with BCPS since July 1, 2015. She was deemed eligible for interview but not selected for interview for the following positions: Staff

Specialist-Gear Up, Educational Associate -SWIFT Partnership, Staff Associate-Enrollment and Attendance, Program Evaluator II-SER, Manager-District and School Leader Support and Development, Education Specialist –Strategic Climate Support, Education and Training Specialist, Coordinator- Secondary School Transformation, Executive Assistant-Specialized Services, Leadership and Development Specialist and Assistant Principal. Although Charging Party was deemed eligible, by Respondent, for these positions; Charging Party as well as other applicants, who were deemed eligible, were not interviewed possibly because a successful applicant was selected prior to their interviewed date, a sufficient applicant pool was reached which negated the need to interview additional eligible applicants, or the position(s) was eliminated and subsequently no applicants were interviewed. **(Exhibit C)**

**28.** Respondent submits that Charging Party was selected for an interview for the following positions: School Operations Managers, Educational Specialist II, Director of Enrollment and Attendance, Student Support Liaison, Director of Transformational Schools, Coordinator of Extended Learning, Coordinator-Assessment and Integrity, School Operations Support Manager, Instructional Lead Executive Director ("ILED"), Academic Content Liaison, Coordinator – Multiple Pathways, Coordinator – Prevention/ Intervention Training and Support, ILED – Secondary Schools, and ILED Elementary Schools. However, Charging Party was not selected for any of the aforementioned positions because of the low scores she received, from the members of the interview panel, during the interviewing process. **(Exhibit C)**

**29.** Respondent submits that for each of the aforementioned positions/jobs; qualified applicants were deemed eligible to be hired. Each applicant was then interviewed for the position by a panel of interviewers. The interview panelist included males and females of diverse races and age groups. Each applicants received a score, from each of the interviewers; based on their answers to prepared questions which related to the position/job specifications. Each applicant(s) scores were combined for a total number, out of a previously determined value number; by the members of the interview panel. The successful applicant (s) was then hired based on the interview scoring results. The successful applicant(s) include Whites, African Americans, Others, males and females of all age groups. **(Exhibits C/F/G)**

**30.** "Upon information and belief, Dr. Thompson was the subject of multiple complaints of gender discrimination and related misconduct, leading to a broad investigation and his separation from employment with Respondent in the fall of 2015."

**31.** Respondent denies that Dr. Thompson was accused of gender discrimination or any other misconduct by anyone other than the Charging Party. Respondent denies that Dr. Thompson was investigated for any reason. Respondent submits that Dr. Theodore Thompson was notified, in correspondence dated May 27, 2015, by the Office of Human Capital that his position had been identified for elimination on June 30, 2015, for BCPS fiscal year 2016. His employment was continued through October 30, 2015, only. **(Exhibit E)**

**32.** <u>"Throughout my career my performance has been very good or excellent, and I have done nothing to warrant such outrageous treatment."</u>

**33.** Respondent agrees that Charging Party's performance was not the reason her position of Network Facilitator was eliminated. Respondent denies that it has discriminated against or mistreated Charging Party in any manner.

**34.** <u>"I have been subjected to discrimination and retaliation in violation of Title VII and the age discrimination in Employment Act."</u>

**35.** Respondent denies that it has discriminated or retaliated against Charging Party in any manner, whatsoever. Respondent submits that Charging Party was not hired because she was not considered the best applicant based on her performances during the interviewing process before and after she filed her internal and external charges of discrimination.

**ARGUMENT**

Charging Party began her employment with Respondent on August 25, 2010 and was employed by the Respondent for approximately five years. During her tenure she held several position including; High School Principal, Administrator School of Business and Entrepreneurial and Network Facilitator. On or about May 30, 2015, her position was eliminated due to a reorganization and reduction in force in response to drastic budget reductions that had been imposed on the district's central office staff. In determining what positions would be impacted by the reorganization, the need to provide continued service to the District were paramount and neither the Charging Party's or any other employees performance history was a consideration or determining factor related to the positions that were identified to be eliminated.

The reorganization plan resulted in the creation of new positions with new titles. Although some of the positions that retained similar functions as eliminated positions, their major functions reflected a new set of skills and duties that focused on the needs of the District and addressed the new educational and financial realities. These positions were posted and available through the Districts competitive application process, which included submitting an application through iRecruitment, analysis of qualifications, and interviews by a diverse panel where applicants were scored according to their responses to a set of questions and then selected based on their score.

The attached documentation will show that the Charging Party applied for 27 posted positions and was interviewed for thirteen (13) of those positions. She was not interviewed for fourteen (14) positions either because the list of certified applicants was deemed large enough, or a selection(s) was made prior to the Charging Party's scheduled interview, or the position was eliminated and not filled at that time. For positions, for which the Complainant was interviewed but not selected, the evidence shows that she emerged from the interviews with the lowest overall scores from each panel. Each applicant who was

interviewed, including the Complainant, was deemed to be qualified; but those who were selected for each position had scored higher in the interview process. Selections were based on the applicant's qualifications and scoring by the interview panels, regardless of their age, sex or race.

Charging Party cannot establish a prima facie case for race discrimination because approximately six (6) applicant(s) selected for the position(s), for which she was interviewed, are the same race as she is; but received a higher score(s) from the interview panels. Further, when the applicant(s) selected was of a different race than Charging Party; the successful applicant(s) received a higher score(s) during the interviewing process. The applicant(s) with the highest score(s) was selected for the position.

1. Charging Party cannot establish a prima facie case for sex or age discrimination because multiply applicant(s) selected for positions, for which Charging Party was interviewed, are the same sex as she is; but received higher score(s) during the interviewing process. Although Charging Party is the oldest applicant; successful applicants were selected of varying ages.

2. Charging Party's retaliation allegations fail because she did not allege that she was harmed because of her involvement in any protected activity that resulted her non-selection. Moreover, the Respondent has demonstrated that the best qualified applicant was chosen for each position(s), she applied for, based on their interview scores.

In order to establish a prima facie case, Charging Party must establish that: (1). She is a member of a protected class; (2) She suffer an adverse employment action; (3) and there is some evidence of discriminatory animus. Evidence of discriminatory animus cannot be established.

**CONCLUSION**

For the foregoing reasons, Respondent respectfully requests that the Commission issue a *NO PROBABLE CAUSE* finding as to Charging Party's claims of discrimination.

Respectfully submitted,

Linda Mason, Investigator
Equal Employment Opportunity
Office of Equal Employment Opportunity and Title IX Compliance
200 East North Avenue, Room 208

410.396.8542 (phone)
410.396.2955 (fax )

Enclosures

# POSITION STATEMENT

# LANA MOORE CASE

THE LAW OFFICES OF
Kathleen Cahill, LLC
15 East Chesapeake Avenue
Towson, Maryland 21286

410.321.6171

September 28, 2017 ELECTRONIC

Janel S. Griffin
EEOC
10 S. Howard St.
Baltimore, Md. 21201

Re: Moore v. Baltimore City Public Schools- 531-2016-00918C

Dear Ms. Griffin:

This is our rebuttal to the Position Statement of Respondent.

Facts

Please see attached Affidavit of Dr. Moore, which is also incorporated herein.

Rebuttal

1. Respondent concedes that Dr. Thompson was on four of the interview panels at issue. As the Deputy Chief Academic Officer, he was number two in the system and the highest level official in the selection process. Respondent represents he was in the position until October 30, 2015.

2. Respondent purports to share the demographics of the interviewing panels. But Exhibit F is incomplete and misleading. Among other things, it shows Dr. Thompson on only two panels, not four. Significantly, it omits the panel composition for the key positions - Manager-School Operations Support (#3828), for which Dr. Moore interviewed three times, as well as for the

Educational Specialist II – Strategic Climate Support position (#3813), including Drs. Garnett and Bundley. Tellingly, Respondent wholly omits age demographics.

3. As demonstrated by Dr. Moore's Affidavit, Exhibit G is incomplete also.

4. Upon information and belief, contrary to the denial, prior to Dr. Moore's complaints, Dr. Thompson was the subject of investigation for his discriminatory treatment of women, in particular, his favorable treatment of certain young women who he was close to and for targeted disfavorable treatment of others.

5. Dr. Thompson was in his late 30's to early 40's at the time at issue.

6. Dr. Thompson was the Hiring Manager with regard to the most important applications submitted by Dr. Moore, in that they were for the open positions awarded in the pivotal period just after the restructuring. Most critically, that included five slots for the Manager-School Operations Support (#3828) position which was nearly identical to the one Dr. Moore had just held and performed successfully.

7. Once Dr. Thompson wholly skipped over Dr. Moore to award the five Manager-School Operations Support (#3828) positions to younger, less qualified, African-American applicants, and she complained, Dr. Moore was permanently stained in the application process. Thereafter, Dr. Moore was effectively banned from further consideration despite her considerable qualifications and experience and her proven track-record in the school system.

8. Even in the sham do-over interview process that resulted from Dr. Moore's complaint of exclusion, Dr. Thompson exhibited his dismissal of Dr. Moore by accepting telephone calls twice during the course of her brief interview.

9. Then when one of the five selectees dropped out, Dr. Moore was not moved into the spot, even though she was the only other applicant. Instead, the job was reposted and there was yet another round of interviews, resulting in a new applicant being chosen over Dr. Moore. That meant the selectees were ages 42, 37, 35, 35, 33, and 32.

10. While we are not able to review the comparators' actual applications, Dr. Moore feels confidant her experience and qualifications, along with her successful years of service in the comparable role, rendered her the most qualified, or at the very least, in the "top five."

11. Once Dr. Moore complained of disparate treatment, she was permanently relegated to the basement of the sole subjective measure: the interview scores. Again, for the critical early period, the summer of 2015 when Dr. Thompson ran the process and the interview panels, Dr. Moore was rated abysmally, 26, 21, 16.

12. With regard to the Coordinator – Prevention/Intervention, Training & Support (#3835), Dr. Moore was rated as qualified but not even interviewed, in violation of policies. Respondent now claims to have "lost" the interview score. The one other applicant, age 34, was interviewed twice.

13. With regard to the four Educational Specialist II – Strategic Climate Support positions (#3813), Dr. Moore *was interviewed and by a fair and unbiased*

*panel* of Drs. Everett Garnett and Andre Bundley. But those scores have disappeared (under a bogus claim of "not interviewed") and the positions were awarded to the only other applicants, ages 44, 35, 35, and 49.

14. Then in March 2017, with this Charge pending, a human resources rep attended and monitored Dr. Moore's interview for an Educational Associate position (#5091). Dr. Moore finally received a recorded high score, but she was still passed over the only other applicant . . . a *lower* scoring applicant.

15. In an effort to explain away instances of failing to interview Dr. Moore after she was deemed eligible/qualified, Respondent states it can cut off interviewing once the pool is large or the successful candidate is identified. But notably, in most instances in which Dr. Moore was not interviewed or was not selected, the pool was small. In fact, in multiple instances she was the only qualified applicant *not* selected or *not* interviewed. And in the one key instance in which six applied for five spots, Manager-School Operations Support (#3828), Dr. Moore was (1) excluded, then (2) added back in after she complained of that exclusion, then (3) not selected, then (4) when one of the selectees dropped out, not moved into the spot – and only to lose that spot too after it was reposted and a new applicant came forward and "won."

16. It is inconceivable that such a distinguished, experienced, incumbent educational executive could not get selected for a single job over two and a half years based on twenty applications – but for discrimination and retaliation for complaining about discrimination. (It is not possible for us, on the information available to us, to prove the merits as to every application

made by Dr. Moore.)

17. Respondent's claim "it's the interview" is not credible and warrants no weight.

18. Respondent's repeated deviation from its own policies and procedures demonstrates pretext. The consistent pattern of positions being awarded to less qualified and less experienced much-younger applicants based on the subjective interview scores is highly suspect. The trail of biased panels, sham interviews, missing scores, failures to interview, interrupted processes, and even a fake "HOLD" outcome add up to pretext and retaliation.

19. Dr. Moore was never provided the opportunity to fairly compete after the lay-off, other than by Drs. Everett Garnett and Andre Bundley, for that fleeting moment. Once she spoke up and protested the discriminatory treatment, Dr. Moore was permanently barred from fair consideration based on her considerable qualifications and experience and proven track record with the school system.

<u>Conclusion</u>

Dr. Moore was subjected to discrimination based on her age and race, and retaliated against once she complained of that discrimination. We urge a finding in favor of Dr. Moore.

We are available to provide any additional information or answer any questions you might have. Thank you.

Very truly yours,

Kathleen Cahill

**AFFIDAVIT OF COMPLAINANT LANA MOORE**

**IN SUPPORT OF EEOC CHARGE OF DISCRIMINATION**

Now comes Charging Party Lana Moore and attests as follows:

1. I am 67 years of age and have been an educator or education administrator for 45 years. I hold a Doctorate Degree in Educational Leadership and an MSDE endorsement to be a Superintendent of Schools. Over my 45-year career, I have served as a teacher, an assistant principal, a principal (at both the high school and the middle school level), and as a network facilitator, among other positions.

2. I began my employment with Baltimore City Public Schools in 2010 as a principal of a high school. I was hired through a lengthy competitive process and based on multiple interviews. I served a very successful two years as a high school principal, and I was then promoted through another competitive process, including interviews, to the position of Network Facilitator supporting 14 elementary school principals throughout the system.

3. At all times, I performed my job duties with commitment and distinction and received favorable reviews.

4. On or about May 30, 2015, I was notified that my position would be eliminated as part of a system-wide reorganization, and that I was able to apply for new positions created in the reorganization.

5. Starting immediately, I applied for numerous positions posted for competitive applications for which I was qualified or highly qualified.

6. Most importantly, among those positions, I immediately applied for the position that was almost identical to my former position, with only a title change. There were five slots for the newly-created position of "Manager-School Operations Support" (#3828). (Exhibit C inaccurately shows I applied on 8/3/15. In fact, I applied in the early days of June, as soon as it was posted.)

7. On or about June 9, 2015, I was stunned to hear that the interviews had already taken place the prior day for the five "Manager-School Operations Support" positions (#3828), and that those interviewed on

June 8 were told by the Hiring Manager, Theodore Thompson PhD, the Deputy Chief Academic Officer, that they would get the decision the next day, June 9. I then found out that of the five applicants, I was the only one not interviewed. Yet I knew I was more qualified than any of the other applicants.

8. I immediately complained to human resources (called "Human Capital") about that development, as I knew the policy required that all qualified applicants must be interviewed and that there could be no legitimate reason to exclude me.

9. I was later advised by human resources that the Hiring Manager, Dr. Thompson, had been questioned and had agreed to interview me.

10. So on June 11, 2015, I was interviewed, but not by the same team as had interviewed the other applicants on June 8, 2015.

11. On June 12, 2015, there was then a second round of interviews for those positions. My interview was very brief. Dr. Thompson, the leader of the panel, actually took two telephone calls during the course of my very brief interview.

12. The next day, on June 13, 2015, the same five people interviewed back on June 6 were advised they were selected. I was not.

13. I believe the whole interview process precipitated by my complaint was a sham. My complaint to human resources interrupted Dr. Thompson's timeline, but it did not change his decision to wholly omit me from the process, and from legitimate, equitable, and fair consideration based on my qualifications and experience. Dr. Thompson made it clear that he was interviewing me under protest.

14. I complained to human resources promptly and then formally to the EEO officer on or about July 17, 2015.

15. A couple of weeks later, one of the five selectees for "Manager-School Operations Support " opted for a different position instead. But rather than offering me the position, as the only other applicant, the slot was reposted. I applied again. (That might be the source of the 8/3/15 date for my application on Exhibit C).

16. To add insult to injury, in that round too, the one new applicant was selected over me, despite being less experienced and qualified (Mr. Henry, age 37). (Note, Exhibit C omits applicant Lisa Brown, who is the person who applied in June, was selected, but then declined the position. Instead, it lists only Harold Henry, who is the new applicant

for the August reposting. That also explains why there is only one score listed for him and "NIF" for the other round.)

17. But most insulting was the fact that Dr. Thompson comprised my August interview panel (there was only one round of interviews that time, for some unknown reason) from three of the women previously selected by him over me in June, and who I had identified in my EEO complaint as being less qualified and wrongfully hired over me. I was so unnerved by this development that in a panic, I actually asked to record my interview, but that was declined. No doubt, the scores for that interview cannot be credited given all those circumstances. (Exhibit C shows only two interview scores for me for "Manager-School Operations Support," but I interviewed three times, June 11, June 12, and in August.)

18. The main duty for the "Manager-School Operations Support "position was to support the schools' principals with regard to the school climate (student incidents and safety plan), academics (attendance and delivery of instruction), and allocation of school resources (preparation and planning of school budget). Dr. Thompson had advised me that they would appoint three Managers to support elementary schools and two Managers to support high schools.

19. I was the only candidate who had actually been a principal of a Baltimore City High School. I was the only candidate who had written a safety plan for a Baltimore City High School. I was the only candidate who prepared and implemented a budget for a Baltimore City High School. I was the only candidate who had developed and implemented numerous climate strategies to remove a Baltimore City High School from the state's "most dangerous list." I was the only candidate who had a Doctorate Degree in Educational Leadership. I was the only candidate who had an Administrator's I & II Certificate in addition to a Superintendent's Certificate.

20. I am hampered in that I am not privy to the personnel files of other applicants, but I do have some information about my comparators. Most glaring among the inequitable selections was Beshon Trusty-Smith (age 42). Ms. Trusty-Smith had less seniority in the school system than I did, she had never been a facilitator, she did not have an advanced degree in education, she had never held a school-based position in the system. Of the other selectees, Ms. Lugay (age 32) had one year of experience in administration as a facilitator, Ms. Walton (age 35) had approximately two and a half years in administration as a facilitator and had never been a principal, Ms. Brown (age unknown) had never been a principal, and Ms. Smith (age 33) had only one year experience as a facilitator. (I had three years' experience as a successful

facilitator.)

21. Thereafter, I continued to apply for numerous jobs for which I was well-qualified. Yet, I continued to be denied positions for which I was the most qualified applicant. In some instances, I was not even interviewed for positions for which I had applied and was inarguably highly qualified, in violation of policy requiring that all qualified applicants be interviewed.

22. Based on that the alarming pattern of being treated adversely with regard to many applications, I amended my internal EEO complaint to include retaliation.

23. I have been advised over and over by human resources that it is my interview scores that have impeded my selection. However, that subjective element could not possibly be the true cause. After all, I was interviewed multiple times successfully to be hired into the system in 2010 for a senior position, I was promoted once after that, including based on my successful interview, and I was never criticized or disciplined for any alleged oral communication issues. It was only after Dr. Thompson cut me out of the key "Manager-School Operations Support" selection process and I complained that I suddenly received such low interview scores. Some are glaringly low: for example, as to the ILED (#3822) panel led by Dr. Thompson, the selectees' scores were 84, 76, 70, 66, 65, 64 and 62 – my score was 26.

24. Upon information and belief, Dr. Thompson was the subject of multiple complaints of gender discrimination and related misconduct, leading to a broad investigation and his separation from employment with Respondent in the fall of 2015. Dr. Thompson was well known for favorable treatment of young African-American female employees, and one group in particular, some of whom he selected over me despite their inferior qualifications and experience. Dr. Thompson also was known to treat older women less favorably, particularly women whom he viewed as challenging him.

25. To date I have applied for approximately twenty positions, for which I have been highly qualified. I have yet to be hired, while many younger and/or less qualified applicants, and those who did not complain of discrimination, have been awarded positions.

26. There have been numerous other irregularities and deviations from policy in the treatment of my applications. There also is incomplete or inaccurate information proffered in the Schools' Position Statement

and Exhibit C.

27. For example, with regard to the position "Coordinator – Prevention/Intervention, Training & Support" (#3835) there is evidence of discriminatory treatment: that position was awarded again without me being interviewed at all, in violation of policy. I learned of the selection and complained to human resources, who advised me I was to be interviewed because I was qualified. But that time there was not even the sham of a "do-over" round. That time too, it was Dr. Thompson who ran that panel and selection process. Notably, the Schools' claim in their submission that they cannot find my interview score ("NIF"), but that is because there was no interview. The selectee was a 34 year old, who apparently was interviewed twice.

28. With regard to Academic Content Liaison position (#3991), there is evidence of discriminatory treatment: it appears according to Exhibit C that I was the sole applicant. They show no interview score, but I was in fact interviewed on September 10, 2015 at 4:00 pm, and was told I was moving to the next round, a writing assignment. That never occurred. Now they represent that the position was not awarded ("HOLD"). But I know for a fact that is a "mission-critical" position that would not be left vacant – I also know that at present it is occupied by Tonya Carter, although I do not have access to information as to when she got the position.

29. With regard to the Educational Specialist II – Strategic Climate Support position (#3813), there is evidence of discriminatory treatment: there were four people selected, ages 44, 35, 35, and 49. Exhibit C shows I applied the very first day, June 1, 2015, was deemed eligible, but was not interviewed. That in and of itself would be suspect. But the fact is, I *did* interview on June 9, 2015, with Drs. Everett Garnett and Andre Bundley and it was a very vibrant and successful interview. It must be that my scores were intercepted or just disappeared. In fact, I even received subsequent support and assistance from Dr. Garnett, who wrote that, based on that interview "I will never forget you."

30. Last but not least, I interviewed in March 2017 for an Educational Associate position (#5091). A human resources representative attended to monitor the interview. I received the highest score, but I was passed over for selection. My score that day was 82 – in contrast to the other scores attributed to me in Exhibit C, 21, 26, and 57/16 – of course, not including the missing favorable score from the June 9, 2015, with Drs. Everett Garnett and Andre Bundley.

31. Throughout my career my performance has been very good or excellent, and I have done nothing to warrant such outrageous

discriminatory treatment.

32. I have been subjected to discrimination and retaliation in violation of Title VII and the Age Discrimination in Employment Act.

I solemnly affirm under the penalties of perjury that the contents of this Affidavit are true to the best of my knowledge, information and belief.

Lana L. Moore Ed. D. September 28, 2017

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Baltimore Field Office**

City Crescent Building
10 South Howard St., 3rd Floor
Baltimore, MD 21201
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Baltimore Direct Dial: (410) 209-2237
TTY (410) 962-6065
FAX (410) 209-2221
FAX (410) 962-4270
http://www.eeoc.gov

April 14, 2017

Letosha Barnes
Equal Employment Opportunity Manager
BALTIMORE CITY PUBLIC SCHOOLS
Office of Equal Employment Opportunity & Title Ix Compliance
200 E. North Avenue, Room 208
Baltimore, Maryland 21202

**EEOC Charge No. 531-2016-00918C**
**Lana Moore v. Baltimore City Public Schools**

Dear Ms. Barnes:

Your organization is hereby requested to submit information and records relevant to the subject charge of discrimination. The Commission is required by law to investigate charges filed with it, and the enclosed request for information does not necessarily represent the entire body of evidence, which we need to obtain from your organization in order to make a proper determination as to the merits of the charge. Please submit a response to the requested information by the date specified below.

The information will only be disclosed in accordance with 29 C.F.R. 1601.22, or otherwise made public if the charge results in litigation.

**If we do not receive the information by the date specified below, we may seek compliance through an administrative subpoena.**

If you have any questions or concerns, please contact me via email at janel.griffin@eeoc.gov. or at (410) 209-2228. Thank you for your anticipated cooperation.

Sincerely,

Janel Griffin

Janel Griffin
Investigator

Response Deadline Date: May 15, 2017

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**REQUEST FOR INFORMATION**

Charging Party: Lana Moore
Respondent: Baltimore City Public Schools
EEOC Charge No.: **531-2016-00918C**

1. State the correct name and address of the specific installation charged. If the mailing address is a box number, provide the street address of the charged installation.

2. Briefly identify the primary function of the establishment charged (e.g., "automobile assembly," "retail sales of men's clothing," "banking services," etc.) and where incorporated.

3. State the number of persons (including supervisors and managers and part-time employees) employed at the specific installation charged and by the organization as a whole on the most recent payroll date. If the total number of employees is over 50, approximations are acceptable.

4. Provide a position statement responding to the facts and circumstances surrounding each alleged discriminatory act, and describe and explain your reasons for taking such actions, along with applicable supporting documentation. In addition, for each applicable item if not already provided as an attachment to the position statement, provide the documents(s) requested or, if no such document(s) exists, so state and provide a statement setting forth the requested information.

5. Provide copies of all Respondent documents, correspondence or memoranda, whether initiated by Respondent, by Charging Party or by other sources, concerning the Charging Party insofar as they related to the allegations contained in the charge (e.g., disciplinary records, layoff or termination notices, pay records, applications/resumes, etc.)

6. Provide copies of the applicable policies or procedures relating to each and every one of the acts alleged to be discriminatory.

7. Provide a list by name and job title of all officials who participated in or made decisions relative to the issues raised in the charge and what role was played by each named official. Provide statements from each such person in response to all allegations of discriminatory treatment for which that official was in any manner involved.

8. For any person(s) who allegedly received more favorable treatment than the Charging Party (as identified on the face of the charge or otherwise), provide documents that show how each person was treated and the reason(s) for such treatment.

9. For charges that include an allegation of discriminatory termination, layoff or demotion, provide the documents to show the replacements: a) name; b) date of hire, transfer or promotion into the position; c) relevant qualifications for the position; and d) starting salary. If Charging Party has not been replaced but one or more employees have assumed her prior duties, identify each such employee by name and title and specify which job duties are performed by each one.

# Combo letter sent

# via email

# Awaiting

# Position Statement

due 2/20/17 per R's 1/18/17 email

(past due)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Baltimore Field Office**

City Crescent Building
10 South Howard St., 3rd Floor
Baltimore, MD 21201
(Charge Status/Pending Business) 1-866-408-8075
(General Info/New Charge Filing) 1-800-669-4000
TTY (410) 962-6065
FAX (410) 962-2817/4270
http://www.eeoc.gov

November 3, 2016

Ms. Letosha R. Barnes
Equal Employment Opportunity Manager
Baltimore City Public Schools
Office of Equal Employment Opportunity and Title IX Compliance
200 E. North Avenue, Room 208
Baltimore, MD 21202

Re: EEOC No.: 531-2016-00918C
Case Name: Lana Moore v Baltimore City Public Schools

Dear Ms. Barnes:

This letter is to inform you that as of this date, EEOC has not received your organization's position statement initially requested on Friday, September 30, 2016. To date, we have not received a response. We again request that your organization submit a statement of position with respect to the allegation(s) contained in the charge, with copies of any supporting documentation on or before **Monday, December 5, 2016.**

At this time, there is still an opportunity to resolve this matter. The Equal Employment Opportunity Commission (EEOC) is willing to engage in a predetermination settlement conference. A predetermination settlement conference is conducted by the Enforcement Unit, presided over by Investigator Maria Tolentino whereby settlement is discussed among the parties (*EEOC, Charging Party, and Respondent*) in which the general terms of a settlement include the stipulation that Charging Party will not pursue any further action in exchange for Respondent providing Charging Party monetary and/or non-monetary compensation and the EEOC ceases its investigation and does not render a finding.

If Respondent is interested in engaging in a predetermination settlement conference with the Enforcement Unit, please notify Maria Tolentino at: maria.tolention@eeoc.gov at (410) 209-2214 by **Friday, November 18, 2016**. If no response is received by Monday, December 5, 2016, then EEOC will continue with its investigative process and Respondent must provide its position statement by date listed above.

**If we do not receive the information by the date specified above, we may either seek compliance through an administrative subpoena or draw an inference that the information you have not provided is likely to support the Charging Party's allegations, and render a determination to this effect.**

Thank you for your anticipated cooperation. Upon receipt and review of your organization's position statement, this charge of discrimination will be assigned to an Investigator.

Sincerely,

/s/

Brunilda Braché
Investigator Support Assistant
Enforcement Unit
bruni.brache@eeoc.gov
Direct Line: 410-209-2731

Attachments: Notice of Charge
Charge of Discrimination

cc: File

FILE COPY

# Exhibit A

# Nondiscrimination Policy

# POLICY

BALTIMORE CITY
BOARD OF SCHOOL COMMISSIONERS

## NONDISCRIMINATION

**I. Policy Standards**

A. The Baltimore City Board of School Commissioners ("Board") shall assure all persons equal opportunity in employment with Baltimore City Public Schools ("City Schools"), regardless of race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, veteran status, or disability unrelated in nature and extent so as to reasonably preclude the performance of employment.

B. The Board further assures that City Schools students are protected against discrimination based upon race, national origin, gender, disability, color, religion, ancestry, marital status, and sexual orientation with respect to student classifications.

C. The Board prohibits discrimination in employment by any person.

D. The Board shall not fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges or employment because of:

1. The individual's race, color, religion, sex, age, national origin, marital status, sexual orientation, genetic information, or disability unrelated in nature and extent so as to reasonably preclude the performance of the employment; or

2. The individual's refusal to submit a genetic test or make available the results of a genetic test.

E. The Board shall not limit, segregate, or classify its employees or applicants for employment in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the individual's status as an employee because of:

1. The individual's race, color, religion, sex, age, national origin, marital status, sexual orientation, genetic information; or

2. The individual's refusal to submit to a genetic test or make available the results of a genetic test.

F. The Board shall not refuse or require genetic tests or genetic information as a condition of hiring or determining benefits.

G. The Board shall not fail or refuse to make a reasonable accommodation for the known disability of an otherwise qualified employee.

## II. Compliance

The Chief Executive Officer ("CEO")/designee, informed by the Office of Equal Employment Opportunity and Title IX Compliance ("EEO Office"), Executive Directors, and Network Facilitators, will report to the Board annually statistics on the number of discrimination complaints and the status of any outstanding complaints.

## III. Legal and Policy References

A. Legal Authority

29 U.S.C. §794
42 U.S.C. §2000d and §2000e
*The Equal Pay Act of 1963*, 29 U.S.C. §206(d)
Titles VI and VII of the 1964 Civil Rights Act
*Pregnancy Discrimination Act*, amendment to Title VII of the 1964 Civil Rights Act
Title IX of the Education Amendments of 1972
Equal Protection Clause of the 14th Amendment
Equal Education Opportunities Act of 1974
§ 6-104, MD. CODE ANN., EDUC.
§§ 20-601 to 609, MD. CODE ANN., STATE GOV'T.

B. Policy References

Related Board Policies: BGF, GBEBB, JICK, JKA

C. Administrative Regulation References

GBEBB-RA, JICK-RA, JKA-RA, JKA-RB, JKA-RC, JKA-RD, JKA-RE

# Exhibit B

# EEO Complaint Form

BALTIMORE CITY
PUBLIC SCHOOLS

**Stephanie Rawlings-Blake**
*Mayor, City of Baltimore*

**Shanaysha M. Sauls, Ph.D.**
*Chair, Baltimore City Board of School Commissioners*

**Tisha Edwards**
*Interim Chief Executive Officer*

# Instructions on Filing a Complaint of Discrimination

If you believe you have been treated differently because of your race or color, national origin or ethnicity, religion of creed, sex or gender, age, physical or mental disability, genetic information, marital status, sexual orientation, or gender identify or expression you have the right to file a complaint with the Office of EEO and Title IX Compliance.

You must file a complaint within 90 days of the most recent act(s) of discrimination or harassment.

After you file the complaint, it will be investigated. This process can take some time.

You are required to keep the Office of EEO and Title IX Compliance informed of any changes in your status, such as a change in schools or department reassignment, home address or phone changes, leave status, etc. You will also be expected to cooperate with the investigation.

**Filing your Complaint:**

Please complete all parts of the form, especially your contact information.

When selecting the basis of your complaint, consider the following definitions:

> **Race** – whether you are Caucasian, African-American, Asian, or Native American
>
> **Sex or Gender** – male or female
>
> **Sexual Harassment** – the harassment is of a sexual nature and is unwelcome.
>
> **National Origin or Ethnicity** – whether you identify yourself as originally from another country or specific culture; you may also speak another language as a first language.
>
> **Age** – under Federal law, you must be 40 years of age or older. Under Maryland Law, you are protected against age discrimination at the age when you can legally be employed.

**Sexual Orientation** – whether you are homosexual, bi-sexual, or heterosexual

**Religion or Creed** – whether you practice a particular faith or belief system

**Veteran Status** – you are currently or have formerly been a member of one of the Uniformed Services, e.g. Navy, Army, Coast Guard, Air Force, National Guard, etc.

**Disability** – whether you have a physical or mental disability

**Color** – whether the color of your skin is a factor in the treatment you describe

**Pregnancy** – whether you are pregnant, expecting to become pregnant, or not

**Genetic Information** – whether you have been identified with a specific genetic condition and treated differently because of that information.

**Marital Status** – whether you are single, married, divorced or widowed

**Gender Identify/Expression** – whether you identify yourself as a gender different from how you were born.

**Retaliation** – Have you *previously complained* to your supervisor, the Office of Human Capital, the Office of EEO and Title IX Compliance of other equal employment enforcement agency *of discriminatory acts by this/these individual(s)*. For example, did complain, *in the past*, about sexual harassment?

Please return the completed, signed and dated form to the

Office of EEO and Title IX Compliance
Room 208
200 East North Avenue
Baltimore MD 21202

Please call 410-396-5842 if you have any questions.

BALTIMORE CITY
PUBLIC SCHOOLS

**Stephanie Rawlings-Blake**
*Mayor, City of Baltimore*

**Shanaysha M. Sauls, Ph.D.**
*Chair, Baltimore City Board of School Commissioners*

**Tisha Edwards**
*Interim Chief Executive Officer*

OFFICE OF EEO AND TITLE IX COMPLIANCE

**Equal Employment Opportunity Complaint Form**

Today's Date: ____________________________________________

Employee's Name: ________________________________________

Employee's ID No.: ______________ Date of Hire: ________________

Employee's Home or Personal Phone Number: ___________________

Employee's Personal Email: _________________________________

Employee's Home Address: _________________________________

______________________________________________________________

Employee's Current Position: ________________________________

Employee's Current School/Office: ___________________________

Employee's Work Phone Number: _____________________________

Employee's Work Address: __________________________________

______________________________________________________________

Please state your preferred address for receiving correspondence:

_____ Home _______Work

BALTIMORE CITY
PUBLIC SCHOOLS

| Stephanie Rawlings-Blake | Shanaysha M. Sauls, Ph.D. | Tisha Edwards |
|---|---|---|
| *Mayor, City of Baltimore* | *Chair, Baltimore City Board of School Commissioners* | *Interim Chief Executive Officer* |

**Please answer the following questions as fully as possible. If you need more space please write your answers on a separate sheet of paper.**

1. Date(s) of alleged discrimination: ____________ to ______________

2. The basis of the alleged discrimination. Please refer to the definitions on the instructions pages and mark off each and every category that is (are) applicable to your situation:

   Race _____ Gender/Sex _____ Sexual Harassment _____

   National Origin or Ethnicity _____ Age _____ Color _____

   Sexual Orientation _____ Religion or Creed _____

   Veteran Status _____ Disability _____ Pregnancy _____

   Genetic Information _____ Gender Identify/Expression _____

   Retaliation _____

3. Please indicate the name of title of each person(s) that you believe has discriminated against you.

| Name | Title | School/Office |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

BALTIMORE CITY
PUBLIC SCHOOLS

**Stephanie Rawlings-Blake**
*Mayor, City of Baltimore*

**Shanaysha M. Sauls, Ph.D.**
*Chair, Baltimore City Board of School Commissioners*

**Tisha Edwards**
*Interim Chief Executive Officer*

**Please provide a detailed explanation of the nature of the alleged discrimination using the following format. Please use additional paper if needed.**

4. Please describe the act(s) that you believe to be discriminatory.

______________________________________________
______________________________________________
______________________________________________
______________________________________________

5. When did the alleged discrimination happen? Is the alleged discrimination still happening?

______________________________________________
______________________________________________
______________________________________________

6. How often did the alleged discrimination occur?

______________________________________________
______________________________________________
______________________________________________

7. Where did the alleged discrimination happen?

______________________________________________
______________________________________________

8. Who else may have been treated differently than you in a similar situation? Please provide their name(s), position(s), and contact numbers, if known.

______________________________________________
______________________________________________

BALTIMORE CITY
PUBLIC SCHOOLS

**Stephanie Rawlings-Blake**
*Mayor, City of Baltimore*

**Shanaysha M. Sauls, Ph.D.**
*Chair, Baltimore City Board of School Commissioners*

**Tisha Edwards**
*Interim Chief Executive Officer*

9. What action or response did you make (if any) when the alleged incident(s) happened or at any time afterwards?

______________________________________________

______________________________________________

______________________________________________

10. Did anyone witness any of the incident(s) that you have described? __________ If so, please provide their name(s):

______________________________________________

______________________________________________

______________________________________________

11. Is there anyone who may have any information relevant to your allegation of discrimination? ______ If so, please provide their name(s):

______________________________________________

______________________________________________

12. Have you told anyone about the incident(s) that you have described? _______ If so, please provide their name(s):

______________________________________________

______________________________________________

13. How would you like to see this matter resolved?

______________________________________________

______________________________________________

______________________________________________

______________________________________________

BALTIMORE CITY
PUBLIC SCHOOLS

**Stephanie Rawlings-Blake**
*Mayor, City of Baltimore*

**Shanaysha M. Sauls, Ph.D.**
*Chair, Baltimore City Board of School Commissioners*

**Tisha Edwards**
*Interim Chief Executive Officer*

**14.** Do you have any other relevant information, i.e. notes, or other documentation? If so, please describe or attach this information.

________________________________________

________________________________________

I affirm to the best of my knowledge, information and belief that the above information is true, accurate and complete.

____________________________ ____________
Employee Signature Date

Please return this form and any supplemental documents to:

Office of EEO and Title IX Compliance
Attn: EEO Manager
Room 208
200 East North Avenue
Baltimore MD 21202

**<u>Complaints of Discrimination via External Agencies</u>**

At any time, subject to the time limits of the external agency, you may file a complaint of discrimination with one of the following external agencies.

| **Baltimore Community Relations Commission** | **Maryland Commission on Civil Rights** | **U.S. Equal Employment Opportunity Commission** |
|---|---|---|
| 10 North Calvert Street<br>Suite 915<br>Baltimore MD 21202 | 6 St. Paul Street<br>9th Floor<br>Baltimore MD 21202 | 100 South Howard Street<br>3rd Floor<br>Baltimore MD 21201 |

# EXHIBIT C

## SUPPORTING CHART INFO.

## LANA MOORE CASE

Supporting Information: L. Moore v. Baltimore City Public Schools
5/10/2017

| IRC # | Job titile | L. Moore Status | Date Applied | L. Moore Inteviewed | Applicant Selcted | Scores | DOB | D.O.H | Race/Sex | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| 3807 | Manager-District & School Leader Support & Development | [redacted] | [redacted] | No | [redacted] | N/A | 9/24/1981 | 11/18/2010 | W/F | N/A |
| 3807 | Manager-District & School Leader Support & Development | Eligible | 1-Jul-15 | No | [redacted] | N/A | N/A | N/A | N/A | N/A |
| 3813 | Educational Specialist II- Strategic Climate Support | Eligible | 1-Jun-15 | No | [redacted] | N/A | N/A | N/A | N/A | N/A |
| 3813 | Educational Specialist II- Strategic Climate Support | [redacted] | [redacted] | No | [redacted] | 44 | 1/13/1971 | 8/28/2002 | B/F | N/A |
| 3813 | Educational Specialist II- Strategic Climate Support | [redacted] | [redacted] | No | [redacted] | 43 | 5/9/1980 | 8/27/2003 | W/F | N/A |
| 3813 | Educational Specialist II- Strategic Climate Support | [redacted] | [redacted] | No | [redacted] | 43 | 1/11/1980 | 7/10/2012 | B/F | N/A |
| 3813 | Educational Specialist II- Strategic Climate Support | [redacted] | [redacted] | No | [redacted] | 50 | 7/21/1966 | 8/19/2008 | B/M | N/A |
| 3820 | ILED- Secondary Schools | [redacted] | [redacted] | Yes | [redacted] | 67 | 1/10/1976 | 12/28/2015 | B/F | N/A |
| 3820 | ILED- Secondary Schools | [redacted] | [redacted] | Yes | [redacted] | 67 | 8/12/1966 | 6/25/2005 | W/M | N/A |
| 3820 | ILED- Secondary Schools | [redacted] | [redacted] | Yes | [redacted] | 64 | 6/17/1962 | 8/29/1996 | B/F | N/A |
| 3820 | ILED- Secondary Schools | Eligible | 30-May-15 | Yes | [redacted] | 21 | 12/4/1949 | 10/25/2010 | W/F | Only invited to first round |
| 3822 | ILED- Elem/ Middle School | Eligible | 30-May-15 | Yes | [redacted] | 26 | 12/4/1949 | 10/25/2010 | W/F | Only invited to first round |
| 3822 | ILED- Elem/ Middle School | [redacted] | [redacted] | Yes | [redacted] | 64 | 11/3/1978 | 10/5/2015 | W/F | N/A |
| 3822 | ILED- Elem/ Middle School | [redacted] | [redacted] | Yes | [redacted] | 65 | 2/24/1969 | 8/28/1997 | B/F | N/A |
| 3822 | ILED- Elem/ Middle School | [redacted] | [redacted] | Yes | [redacted] | 62 | 3/26/1957 | 1/7/2006 | W/F | N/A |
| 3822 | ILED- Elem/ Middle School | [redacted] | [redacted] | Yes | [redacted] | 84 | 11/6/1979 | 8/3/2015 | B/M | N/A |
| 3822 | ILED- Elem/ Middle School | [redacted] | [redacted] | Yes | [redacted] | 66 | 1/7/1959 | 8/30/2005 | W/F | N/A |
| 3822 | ILED- Elem/ Middle School | [redacted] | [redacted] | Yes | [redacted] | 70 | 7/17/1976 | 7/8/2006 | O/F | N/A |
| 3822 | ILED- Elem/ Middle School | [redacted] | [redacted] | Yes | [redacted] | 76 | 11/26/1975 | 2/18/2014 | B/M | N/A |

Supporting Information: L. Moore, Baltimore City Public Schools
5/10/2017

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 3828 | Manager- School Operations Support | [redacted] | | Yes | [redacted] | 78/NIF | 1/27/1978 | 7/1/2009 | B/M | Interviewed at a later date by a different panel |
| 3828 | Manager- School Operations Support | [redacted] | | Yes | [redacted] | 80/31 | 10/2/1971 | 7/3/2010 | B/F | N/A |
| 3828 | Manager- School Operations Support | [redacted] | | Yes | [redacted] | 64/30 | 3/16/1973 | 4/8/2013 | B/F | N/A |
| 3828 | Manager- School Operations Support | [redacted] | | Yes | [redacted] | 50/34 | 5/22/1980 | 12/18/2002 | B/F | N/A |
| 3828 | Manager- School Operations Support | [redacted] | | Yes | [redacted] | 96/35 | 12/29/1983 | 7/7/2014 | B/F | N/A |
| 3828 | Manager- School Operations Support | Eligible | 3-Aug-15 | Yes | [redacted] | 57/16 | 12/4/1949 | 10/25/2010 | W/F | N/A |
| 3835 | Coordinator-- Prevention/Intervention, Training & Support | [redacted] | | Yes | [redacted] | 83/32 | 11/19/1980 | 6/23/2007 | W/M | N/A |
| 3835 | Coordinator-- Prevention/Intervention, Training & Support | Eligible | 2-Jun-15 | Yes | [redacted] | NIF | 12/4/1949 | 10/25/2010 | W/F | N/A |
| 3918 | Evaluation and Training Specialist | Eligible | 20-Jan-16 | No | [redacted] | N/A | N/A | N/A | N/A | N/A |
| 3941 | Director- School Transformation & Turnaround | [redacted] | | Yes | [redacted] | 54 | 11/3/1970 | 9/12/2011 | W/F | N/A |
| 3941 | Director- School Transformation & Turnaround | Eligible | 8-Jul-15 | Yes | [redacted] | 38 | 12/4/1949 | 10/25/2010 | W/F | N/A |
| 3945 | Coordinator- Secondary School Transformation | No Longer Available | 1-Jul-15 | No | [redacted] | N/A | 8/20/1978 | 8/29/2001 | W/M | N/A |
| 3960 | Director- Enrollment & Attendance | [redacted] | | Yes | [redacted] | 111 | 2/28/1978 | 7/1/2009 | B/F | N/A |
| 3960 | Director- Enrollment & Attendance | Eligible | 9-Jul-15 | Yes | [redacted] | 70 | 12/4/1949 | 10/25/2010 | W/F | N/A |
| 3966 | Coordinator- Extended Learning | [redacted] | | Yes | [redacted] | NIF | 10/17/1960 | 1/16/2007 | W/F | N/A |
| 3966 | Coordinator- Extended Learning | Eligible | 21-Jul-15 | Yes (phone) | [redacted] | NIF | 12/4/1949 | 10/25/2010 | W/F | N/A |
| 3979 | Staff Specialist- Gear Up | Eligible | 11-Aug-15 | No | [redacted] | N/A | 8/9/1960 | 10/2/2006 | B/F | N/A |
| 3985 | Student Support Liaison | [redacted] | | Yes | [redacted] | 62 | 7/4/1969 | 5/26/2007 | B/F | N/A |
| 3985 | Student Support Liaison | Eligible | 26-Jul-15 | Yes | [redacted] | 56 | 12/4/1949 | 10/25/2010 | W/F | N/A |
| 3991 | Academic Content Liaison | Eligible | 7-Sep-15 | Yes | [redacted] | N/A | N/A | N/A | N/A | N/A |
| 4068 | Program Evaulator II- School Effectiveness Review | Eligible | 12-Oct-15 | No | [redacted] | N/A | 11/3/1979 | 11/30/2015 | W/F | N/A |
| 4069 | Educational Associate 10mth- SWIFT Partnership Schools | Eligible | 12-Oct-15 | No | [redacted] | N/A | N/A | N/A | N/A | N/A |
| 4106 | Coordinator- Assessment & Integrity | [redacted] | | Yes | [redacted] | 152 | 2/6/1979 | 7/29/2013 | B/F | N/A |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 4106 | Coordinator- Assessment & Integrity | Eligible | 16-Oct | Yes | [redacted] | 123 | 12/4/1949 | 10/25/2010 | W/F | N/A |
| 4145 | Staff Associate- Enrollment and Attendance | Eligible | 22-Oct-15 | No | [redacted] | N/A | 7/6/1984 | 9/5/2006 | B/M | N/A |
| 4320 | Educational Associate 12 mo. Multiple Pathway | Eligible | 7-Jan-16 | No | [redacted] | N/A | N/A | N/A | N/A | N/A |
| 4425 | Coordinator- Multiple Pathways | [redacted] | 28-Jan-16 | Yes | [redacted] | 75 | 1/11/1980 | 7/10/2012 | B/F | N/A |
| 4425 | Coordinator- Multiple Pathways | Eligible | 28-Jan-16 | Yes | [redacted] | 35 | 12/4/1949 | 10/25/2010 | W/F | N/A |
| 4489 | Educational Specialist II- Suspension Services | [redacted] | | Yes | [redacted] | 91 | 8/31/1966 | 6/24/2006 | B/F | N/A |
| 4489 | Educational Specialist II- Suspension Services | Eligible | 23-Feb-16 | Yes | [redacted] | 84 | 12/4/1949 | 10/25/2010 | W/F | N/A |
| 4499 | Manager- School Operations Support | No Longer Available | 18-Mar-16 | No | [redacted] | N/A | N/A | N/A | N/A | N/A |
| 4513 | Executive Assistant- Specialized Services | Eligible | 29-Feb-16 | No | [redacted] | N/A | N/A | N/A | N/A | N/A |
| 4520 | Leadership Development Specialist | Eligible | 8-Mar-16 | No | [redacted] | N/A | N/A | N/A | N/A | N/A |
| 4579 | Assistant Principal | Application Received | 21-Apr-16 | N/A | [redacted] | N/A | N/A | N/A | N/A | N/A |
| 5091 | Educational Associate 12mth- Suspension Services | [redacted] | | Yes | [redacted] | 75 | 4/7/1958 | 8/30/2004 | W/F | N/A |
| 5091 | Educational Associate 12mth- Suspension Services | Eligible | 3-Jan-17 | Yes | [redacted] | 82 | 12/4/1949 | 10/25/2010 | W/F | Note: there were 4 other candidates who scored higher than Ms. Moore |

| KEY: |
|---|
| B/F= Black Female |
| B/M= Black Male |
| IRC: Irecruitment # |
| N/A= Not Applicable |
| NIF= No Information Found |
| O= Other |
| W/F= White Female |
| W/M= White Male |

# EXHIBIT D

# JOB DESCRIPTIONS

## LANA MOOR CASE

BALTIMORE CITY
PUBLIC SCHOOLS

| | | | |
|---|---|---|---|
| **JOB TITLE:** | School Support Networks Team Facilitator | | |
| **DIVISION:** | Office of School Support Networks | **JOB CODE:** | 109936 |
| **DEPARTMENT:** | | **AFFILIATION:** | None |
| **DATE DEVELOPED:** | 4/13/11 | **GRADE:** | GSS.186 |
| | | Posted Range: | $90,000-$100,000 |
| **REVISION DATES:** | 3/14/12 | **OVERTIME STATUS:** | Exempt |

**REPORTS TO:** School Support Networks Officer
**SUPERVISOR'S SUPERIOR:** Chief Executive Officer
**POSITIONS SUPERVISED:** School Support Networks Staff

**JOB SUMMARY**

The Facilitator will work closely with the Executive Directors for Principal Support in supporting transformational leadership, providing professional development and leadership support within each school, and creating professional learning communities among school leaders. The Facilitator will serve in a managerial confidential capacity with significant discretion and decision-making authority in consultation with and as an advisor to the School Support Networks Officer regarding educational policy aimed at driving student achievement for Baltimore City Public Schools (City Schools).

The Facilitator will have a direct relationship with the Executive Director for Principal Support, which may include partnering in supporting the implementation of the strategic priorities of school leaders, supporting the implementation of the Leadership Development Plans and school improvement plans, supporting the implementation of key systemic initiatives and school-level strategies, and providing follow-up to professional learning experiences.

**ESSENTIAL FUNCTIONS**

- Organizes network supports to meet strategic school needs.
- Aids the work of school-based leadership teams by providing guidance and support for the day-to-day functions of the school.
- Provides input into the development and implementation of strategic plans to meet the mission and vision of the school and ensuring the appropriate use of resources to support high academic achievement.
- Works closely with the principals in their network and is held partially accountable for the success of their schools in meeting their cumulative performance targets in all critical areas, as well as engendering high levels of principal satisfaction with the services and support they provide.
- Frequently visits schools, participating on school leadership teams, deploying appropriate Network resources to meet school needs, and advocating on behalf of school autonomies.

- Supervises and directs the work of the staff members assigned to their team responsible for providing high quality academic and operational support to the schools they serve.
- Knows schools better than any other part of the City School's organization.
- Contributes to and plays a significant role in the acquisition and management of District knowledge and information about school activities and performance by identifying effective practices emerging throughout the District and highlighting schools that effectively employ school-wide strategies to improve outcomes for all children.
- Liaises with and interfaces with all central office departments related to the operational and instructional management of a school and provides feedback from schools to inform district policy.
- Develops relationships with, and obtains sourcing services from external partners.
- Conducts written evaluations and feedback for Network standard support staff assigned to their team. Provides written input and feedback into the evaluations of Network specialized support staff assigned to their team.
- Participates in recruitment of School support network staff.
- Performs and promotes all activities in compliance with equal employment and nondiscrimination policies; follows federal laws, state laws, school board policies and the professional standards.

## QUALIFICATIONS

- Bachelor's degree in education, business, management, public administration or related field; (Master's degree preferred) from an accredited college or university
- Five years of leadership experience preferably in the field of Education
- Admin 1 Certification preferred, but not required
- Valid Class C Noncommercial driver's license and daily access to personal transportation
- Demonstrated experience in high level complex problem solving, building leadership capacity, managing and contributing to large scale organizational change
- Demonstrated knowledge of student achievement in a public or private school, foundation and/or community organization, as well as knowledge of productive school cultures
- Proficient in the critical competency areas of project management, strategic planning, organizational and operational skills
- Knowledge of legal mandates governing education
- Interpersonal skills that ensure effective support of principals, effective team building, and advocacy
- Excellent communications and advocacy skills
- Experience in working with leaders to improve performance and planning/providing professional development
- Understanding of the Baltimore City Schools educational environment
- Ability to work cooperatively with a variety of district offices and with other coaches to provide high-level district overview of schools
- Experience in using data at a school level to analyze trends in attendance, behaviors, academics and other areas that effect student achievement
- Demonstrated knowledge of data analysis and using data surrounding outcomes to support professionals in improvement planning, goal setting and continuous improvement activities
- Proficient in the use of technical computer applications, including Microsoft Office, particularly Excel, Word, PowerPoint and Access

**PERFORMANCE RESPONSIBILITIES: OTHER DUTIES AND RESPONSIBILITIES**

- Performs other related duties as assigned.

**PHYSICAL DEMANDS**

- Light work, exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently.

**WORK ENVIRONMENT**

- Not substantially exposed to adverse environmental conditions.

**EVALUATION**

- Performance of this position will be evaluated in accordance with the provisions of Board policy on evaluation of employees.

The above is intended to describe the essential content of and requirements for the performance of this job. It is not to be construed as an exhaustive statement of duties, responsibilities or requirements.

| | | | |
|---|---|---|---|
| 3/14/12 | | 3/15/12 | |
| Jonathan Brice | Date | Kim Lewis, Ed. D. | Date |
| School Support Networks Officer | | Human Capital Officer | |

GREAT KIDS
GREAT SCHOOLS

BALTIMORE CITY PUBLIC SCHOOLS

**JOB TITLE:** Manager – School Operations Support
**DIVISION:** School Support Office
**DEPARTMENT:**
**DATE DEVELOPED:** 05-26-15
**REVISION DATE:**

**JOB CODE:** 110263
**AFFILIATION:** UAF
**GRADE:** 185
**OVERTIME STATUS:** Exempt

**REPORTS TO:** Chief of School Support
**SUPERVISOR'S SUPERIOR:** Chief Executive Officer
**POSITIONS SUPERVISED:**

**JOB SUMMARY**

The Manager - School Operations Support will work closely with the Chief of School Support to provide strategic guidance and support to all schools. The Manager will serve in a multi-faceted, operational capacity in order to ensure that all schools create conditions for learning for all students through professional development and implementation of district policies and guidelines.

**PERFORMANCE RESPONSIBILITIES: ESSENTIAL FUNCTIONS**

- Serves as a member of the Office of School Support leadership team and assists in planning, development, establishment of goals and objectives for the network improvement plan.
- Monitors the performance of schools in all areas of responsibility against established goals and objectives and advises the Chief of School Support on areas of improvement.
- Facilitates the preparation and planning of school's annual budget in coordination with the Office of Finance.
- Provides support and guidance to leadership teams regarding daily school based functions.
- Provides leadership and facilitation in the implementation and evaluation of behavioral interventions.
- Collaborates with school based and district teams to develop and implement school safety plans.
- Collaborates with School Support Team and school based administration to provide support and resolution to student incident, parent concerns and climate/building related issues.
- Provides technical assistance to schools to resolve transportation issues in collaboration with City Schools Transportation Office.
- Gains a deep understanding of current initiatives that support improved academics and attendance; works closely with Office of School Support leadership to document the success of these processes in a strategic plan, implementation and success or failure of those strategies.
- Collaborates with school based administrative team and School Support Team to improve delivery of instruction and climate programs.
- Develops and manages collaborative communications and working relationships with schools and City Schools central office departments.
- Performs and promotes all activities in compliance with equal employment and nondiscrimination policies; follows federal laws, state laws, school board policies and the professional standards.

**QUALIFICATIONS**

- Master's degree in education, business, public administration or related field from an accredited college or university.

- Valid Maryland State Department of Education Advanced Professional Certificate (APC) with Administrator I preferred, but not required.
- Valid Class C Noncommercial driver's license and personal transportation.
- Demonstrated experience in complex problem solving with use of available resources and identifying creative solutions to challenging problems.
- Demonstrated knowledge of strategies that impact positive student achievement and productive school culture.
- Proficient in project management, strategic planning, organizational and operational skills.
- Knowledge of federal and state legislation and guidelines governing the education and discipline of students.
- Interpersonal skills that ensure effective support of principals.
- Excellent verbal and communications, advocacy, and presentation skills.
- Experience working cooperatively and collaboratively with City Schools central office departments and to provide high-level district information of all schools.
- Demonstrated knowledge of school level data analysis regarding climate, academic, attendance/truancy trends and other areas that impact student achievement.
- Proficient use of technical computer applications, including Microsoft Office, particularly Excel, Word, PowerPoint and Access.

**PERFORMANCE RESPONSIBILITIES: OTHER DUTIES AND RESPONSIBILITIES**

- Performs other related duties as assigned.

**PHYSICAL DEMANDS**

- Light work, exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently.

**WORK ENVIRONMENT**

- Not substantially exposed to adverse environmental conditions.

**EVALUATION**

- Performance of this position will be evaluated in accordance with the provisions of the applicable Board policy and or administrative regulations.

**NOTICE OF NONDISCRIMINATION**

- Baltimore City Public Schools does not discriminate in any aspect of employment on the basis of race, color, ancestry or national origin, religion, sex, sexual orientation, gender identity, gender expression, marital status, disability, veteran status, genetic information, or age. For inquiries regarding the nondiscrimination policies, please contact the Equal Employment Opportunity Manager, 200 E. North Avenue, Room 208, Baltimore, MD 21202; 410-396-8542 (phone); 410-396-2955 (fax).

The above is intended to describe the essential content of and requirements for the performance of this job. It is not to be construed as an exhaustive statement of duties, responsibilities or requirements.

[signature] 5/26/15
Chief of School Support — Date

[signature] 5/27/2015
Lisa Grillo, Ed. D.
Chief Human Capital Officer — Date

BALTIMORE CITY
PUBLIC SCHOOLS

| | | | |
|---|---|---|---|
| **JOB TITLE:** | Educational Specialist II - Strategic Climate Support | | |
| **DIVISION:** | School Support | **JOB CODE:** | 110274 |
| **DEPARTMENT:** | Climate and Suspension | **AFFILIATION:** | PSASA |
| **DATE DEVELOPED:** | 05-27-15 | **GRADE:** | 960-962 |
| **REVISION DATE:** | | **OVERTIME STATUS:** | Exempt |

| | |
|---|---|
| **REPORTS TO:** | Coordinator- Strategic Climate Intervention |
| **SUPERVISOR'S SUPERIOR:** | Director- Climate and Suspension |
| **POSITIONS SUPERVISED:** | None |

**Related positions are contingent on board approval.**

**JOB SUMMARY**

Educational Specialists II - Strategic Climate Support is educational professionals who are passionate about improving student academic performance through the transformation of school climate and culture within Baltimore City Public Schools (City Schools). They draw upon their extensive background and vast experience in education to serve as climate experts, coaches, and thought leaders within schools. School climate specialists are dedicated to the improvement of school climate and culture, which enables them to provide constructive feedback and engage in strategic problem-solving related to school climate. They should possess strong consensus building and analytical skills and be able to motivate and inspire a diverse group of stakeholders toward a common goal. School climate specialists collaborate with school staff, school leadership, and district leadership to implement strategies and programs designed to create and sustain positive school culture and climate.

School climate specialists facilitate school and district development opportunities that model best practices for school leaders, staff, and families in developing academic, social, and emotional supports for students. They also serve as liaisons between students and teachers and administrators.

All applicants should have strong knowledge of school turnaround principles and an understanding of educational policy and practice.

**PERFORMANCE RESPONSIBILITIES: ESSENTIAL FUNCTIONS**

Serves as a climate and culture leader in collaboration with school and district leadership:

- Fosters a collaborative school culture to support student development and learning by establishing a process for collaboration, modeling best practices in climate and culture to advance shared goals and professional learning, building ownership and action among school stakeholders that support student learning and use knowledge and understanding of different backgrounds, ethnicities, cultures, and languages to promote effective interactions.
- Collaborates closely with district support staff to ensure effective implementation of district initiatives related to school climate and culture.
- Keeps abreast of the latest research about school climate and culture through independent research and participation in district professional development.
- Successfully implements protocols, procedures, and best practices modeled in professional development.

- Models continuous learning and reflective practice for colleagues. The climate lead works collaboratively with school staff to constantly improve school climate and culture practices.

Develops and implements culture and climate programming and accompanying measurement tools:

- Collaborates with school leaders and other colleagues to address culture and climate challenges. Utilizes district training and expert knowledge to model for team meetings, teacher support, and coaching protocols.
- Works collaboratively with school and district leaders to develop a strategic implementation plan for improving climate and culture.
- Implements culture and climate readiness processes across assigned school.
- Works with district leaders and school data leader to develop a system for measuring culture and climate improvements (i.e., attendance, suspension, immunization, etc.).
- Works with administration to ensure implementation and accuracy of disciplinary systems.
- Implements detailed systems that ensure an effective school day (i.e., classroom transitions, morning arrival, end-of-day departures, school-wide transitions, cafeteria protocols, playground/recess protocol, etc.).
- Identifies at-risk students and works with Student Support Teams (SST) to ensure proper support.
- Acts as a liaison between school leaders, students, and district leaders to ensure effective communication.
- Maintains documentation to track and monitor progress.
- Identifies community partners to supplement student and school support needs as needed.
- Maximizes full parent and community engagement for high priority school events.

Provides on-going professional development to all stakeholders:

- Designs and facilitates job-embedded professional development opportunities that are aligned with school climate goals and district priorities.
- Provides professional development to school stakeholders designed to increase their skill level in developing academic, social, and emotional support for students.
- Plans and facilitates weekly team meetings focused on discussion and evaluation of student growth and teachers' use of school climate and culture strategies.

**QUALIFICATIONS**

- Master's degree in social work, psychology, counseling or related field preferred. Degree must be from an accredited college or institution.
- A valid Maryland State Department of Education teaching certificate; Advanced Professional Certificate preferred.
- Minimum of three years of educational experience or minimum of five years of experience as a social worker, psychologist or counselor.
- Demonstrated knowledge of school climate and culture principles.
- Demonstrated experience in consensus building.
- Ability to motivate and inspire a diverse set of stakeholders toward a common goal.
- Three years of experience in creating and providing professional development (PD) and/or facilitating team meetings.
- Excellent verbal and written communication skills.
- Knowledge of laws, regulations, rules and policies affecting City Schools' educators.
- Valid Class C Noncommercial driver's license and daily access to personal transportation.

**PERFORMANCE RESPONSIBILITIES: OTHER DUTIES AND RESPONSIBILITIES**

- Performs other related duties as assigned.

**PHYSICAL DEMANDS**

- Light work, exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently.

**WORK ENVIRONMENT**

- Not substantially exposed to adverse environmental conditions.

**EVALUATION**

- Performance of this position will be evaluated in accordance with the provisions of the applicable Board policy and or administrative regulations.

**NOTICE OF NONDISCRIMINATION**

- Baltimore City Public Schools does not discriminate in any aspect of employment on the basis of race, color, ancestry or national origin, religion, sex, sexual orientation, gender identity, gender expression, marital status, disability, veteran status, genetic information, or age. For inquiries regarding the nondiscrimination policies, please contact the Equal Employment Opportunity Manager, 200 E. North Avenue, Room 208, Baltimore, MD 21202; 410-396-8542 (phone); 410-396-2955 (fax).

The above is intended to describe the essential content of and requirements for the performance of this job. It is not to be construed as an exhaustive statement of duties, responsibilities or requirements.

| | | | |
|---|---|---|---|
| Linda Chen<br>Chief Academic Officer | Date | Lisa Grillo, Ed.D.<br>Chief ~~Human~~ Capital Officer | 5/27/2015<br>Date |

BALTIMORE CITY
PUBLIC SCHOOLS

| | | | |
|---|---|---|---|
| **JOB TITLE:** | Educational Specialist II - Strategic Climate Support | | |
| **DIVISION:** | School Support | **JOB CODE:** | 110274 |
| **DEPARTMENT:** | Climate and Suspension | **AFFILIATION:** | PSASA |
| **DATE DEVELOPED:** | 05-27-15 | **GRADE:** | 960-962 |
| **REVISION DATE:** | | **OVERTIME STATUS:** | Exempt |

| | |
|---|---|
| **REPORTS TO:** | Coordinator- Strategic Climate Intervention |
| **SUPERVISOR'S SUPERIOR:** | Director- Climate and Suspension |
| **POSITIONS SUPERVISED:** | None |

**Related positions are contingent on board approval.**

**JOB SUMMARY**

Educational Specialists II - Strategic Climate Support is educational professionals who are passionate about improving student academic performance through the transformation of school climate and culture within Baltimore City Public Schools (City Schools). They draw upon their extensive background and vast experience in education to serve as climate experts, coaches, and thought leaders within schools. School climate specialists are dedicated to the improvement of school climate and culture, which enables them to provide constructive feedback and engage in strategic problem-solving related to school climate. They should possess strong consensus building and analytical skills and be able to motivate and inspire a diverse group of stakeholders toward a common goal. School climate specialists collaborate with school staff, school leadership, and district leadership to implement strategies and programs designed to create and sustain positive school culture and climate.

School climate specialists facilitate school and district development opportunities that model best practices for school leaders, staff, and families in developing academic, social, and emotional supports for students. They also serve as liaisons between students and teachers and administrators.

All applicants should have strong knowledge of school turnaround principles and an understanding of educational policy and practice.

**PERFORMANCE RESPONSIBILITIES: ESSENTIAL FUNCTIONS**

Serves as a climate and culture leader in collaboration with school and district leadership:

- Fosters a collaborative school culture to support student development and learning by establishing a process for collaboration, modeling best practices in climate and culture to advance shared goals and professional learning, building ownership and action among school stakeholders that support student learning and use knowledge and understanding of different backgrounds, ethnicities, cultures, and languages to promote effective interactions.
- Collaborates closely with district support staff to ensure effective implementation of district initiatives related to school climate and culture.
- Keeps abreast of the latest research about school climate and culture through independent research and participation in district professional development.
- Successfully implements protocols, procedures, and best practices modeled in professional development.

- Models continuous learning and reflective practice for colleagues. The climate lead works collaboratively with school staff to constantly improve school climate and culture practices.

Develops and implements culture and climate programming and accompanying measurement tools:
- Collaborates with school leaders and other colleagues to address culture and climate challenges. Utilizes district training and expert knowledge to model for team meetings, teacher support, and coaching protocols.
- Works collaboratively with school and district leaders to develop a strategic implementation plan for improving climate and culture.
- Implements culture and climate readiness processes across assigned school.
- Works with district leaders and school data leader to develop a system for measuring culture and climate improvements (i.e., attendance, suspension, immunization, etc.).
- Works with administration to ensure implementation and accuracy of disciplinary systems.
- Implements detailed systems that ensure an effective school day (i.e., classroom transitions, morning arrival, end-of-day departures, school-wide transitions, cafeteria protocols, playground/recess protocol, etc.).
- Identifies at-risk students and works with Student Support Teams (SST) to ensure proper support.
- Acts as a liaison between school leaders, students, and district leaders to ensure effective communication.
- Maintains documentation to track and monitor progress.
- Identifies community partners to supplement student and school support needs as needed.
- Maximizes full parent and community engagement for high priority school events.

Provides on-going professional development to all stakeholders:
- Designs and facilitates job-embedded professional development opportunities that are aligned with school climate goals and district priorities.
- Provides professional development to school stakeholders designed to increase their skill level in developing academic, social, and emotional support for students.
- Plans and facilitates weekly team meetings focused on discussion and evaluation of student growth and teachers' use of school climate and culture strategies.

**QUALIFICATIONS**
- Master's degree in social work, psychology, counseling or related field preferred. Degree must be from an accredited college or institution.
- A valid Maryland State Department of Education teaching certificate; Advanced Professional Certificate preferred.
- Minimum of three years of educational experience or minimum of five years of experience as a social worker, psychologist or counselor.
- Demonstrated knowledge of school climate and culture principles.
- Demonstrated experience in consensus building.
- Ability to motivate and inspire a diverse set of stakeholders toward a common goal.
- Three years of experience in creating and providing professional development (PD) and/or facilitating team meetings.
- Excellent verbal and written communication skills.
- Knowledge of laws, regulations, rules and policies affecting City Schools' educators.
- Valid Class C Noncommercial driver's license and daily access to personal transportation.

**PERFORMANCE RESPONSIBILITIES: OTHER DUTIES AND RESPONSIBILITIES**
- Performs other related duties as assigned.

PHYSICAL DEMANDS
- Light work, exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently.

WORK ENVIRONMENT
- Not substantially exposed to adverse environmental conditions.

EVALUATION
- Performance of this position will be evaluated in accordance with the provisions of the applicable Board policy and or administrative regulations.

NOTICE OF NONDISCRIMINATION
- Baltimore City Public Schools does not discriminate in any aspect of employment on the basis of race, color, ancestry or national origin, religion, sex, sexual orientation, gender identity, gender expression, marital status, disability, veteran status, genetic information, or age. For inquiries regarding the nondiscrimination policies, please contact the Equal Employment Opportunity Manager, 200 E. North Avenue, Room 208, Baltimore, MD 21202; 410-396-8542 (phone); 410-396-2955 (fax).

The above is intended to describe the essential content of and requirements for the performance of this job. It is not to be construed as an exhaustive statement of duties, responsibilities or requirements.

| | | | |
|---|---|---|---|
| Linda Chen<br>Chief Academic Officer | Date | Lisa Grillo, Ed.D.<br>Chief Human Capital Officer | 5/27/2015<br>Date |

**MEMORANDUM OF UNDERSTANDING**
**BETWEEN**
**THE BALTIMORE CITY BOARD OF SCHOOL COMMISSIONERS**
**AND**
**PARTNER/VENDOR NAME**

THIS MEMORANDUM OF UNDERSTANDING ("MOU") is made this 1st day of June 2015, by and between the Baltimore City Board of School Commissioners ("Board") for the Baltimore City Public Schools ("City Schools") and the Chapin Hall at the University of Chicago Name ("Vendor").

WHEREAS, the Vendor and the Board wish to enter into a memorandum of understanding to conduct a research study titled, "*Impact of Elev8 Baltimore Initiative on Academic Outcomes.*'

NOW THEREFORE, THIS MOU WITNESSETH THAT, in consideration of the mutual promises and covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**A. TERM**

The term of this MOU shall begin on 8/1/2015 and end on 7/30/16, unless sooner terminated in accordance with this MOU.

The parties may renew this agreement for an additional term upon the written agreement of the parties within 60 days prior to the expiration of this MOU.

**B. OBLIGATIONS OF THE PARTIES**

During the term of this Agreement the Vendor and the Board shall perform such obligations which are set forth in the attached document which is entitled Roles and Responsibilities, and is made a part of this Agreement (Attachment I to this Agreement).

**C. COMPENSATION**

No compensation shall be provided to either party. If there are any costs associated with the obligations of this MOU, each party shall bear their own costs and/or expenses.

**D. DOCUMENTATION AND RECORD KEEPING**

The Vendor shall maintain documentation as necessary to prove that it is meeting its obligations under this MOU and such other standards as apply. The Vendor shall maintain such documentation for a period of three (3) years after the termination of this MOU, or in the alternative, shall submit such documentation to the Board within 30 days of the expiration date of this MOU. At any time during normal business hours, and as deemed necessary by the Board, the Vendor shall make available to the Board any such documentation for inspection. Copies of any School Records are the property of the Board and shall be returned by the Vendor to the Board upon the termination of this MOU.

**E. CRIMINAL BACKGROUND CHECK.**

It is the responsibility of the Vendor to make certain that its employees, agents, volunteers, and contractors and any instructors who have contact with students be fingerprinted and have a background check in compliance with Title 5, Subtitle 5, Part VI, of the Family Law Article of the Maryland Code.

1. Employees Having Direct Contact with Students:
   Any and all current and future employees of the Vendor who have direct contact with students must have a criminal background check and fingerprinting conducted by the Human Resources Department of the City Schools before beginning work in a City School. Previous background checks will not be accepted. The fee for the background check shall be paid by check or money order at the time the fingerprinting is performed. No employee can begin work in a City School until results have been received. Violation of this provision may result in Termination for Cause.

2. Employment of Sex Offenders:
   The Vendor shall at all times be compliant with the Criminal Procedure Article of Annotated Code of Maryland Section 11-722 that states that a person who enters a contract with a County Board of Education or a nonpublic school may not knowingly employ an individual to work at a school if the individual is a registered sex offender. If a registered sex offender is employed by the Vendor, they are prohibited from assigning that employee to perform management, delivery, installation, repair, construction or any other type of services on any City Schools property. Violation of this provision may result in Termination for Cause.

**F. STUDENT'S EDUCATION/MEDICAL/PSYCHOLOGICAL RECORDS/CONSENTS**

Prior to dissemination or review of records, Vendor and its employees, agents, volunteers and contractors shall maintain the confidentiality of all medical, psychological, and student records in compliance with federal and state laws.

**G. CONFIDENTIALITY**

Prior to dissemination or review of records, Vendor/Partner and its employees, agents, volunteers and contractors shall maintain the confidentiality of all medical, psychological, and student records in compliance with federal and state laws. Specifically, Vendor/Partner acknowledges its responsibility to ensure compliance with the confidentiality provisions of the Family Educational Records Privacy Act (34 CFR §99); The Health Insurance Portability and Accountability Act of 1996 (HIPAA) 45 CFR Part 160 and Part 164, Subparts A and E, and Code of Maryland Regulations §13A.08, with respect to school records provided by the Board, if applicable.

Any confidential information provided by City Schools to Vendor/Partner, including all copies thereof must be used by Vendor/Partner only as permitted by this Agreement and only for the purposes herein described. Such information shall not be disseminated or disclosed to any third party, not a party to this Agreement, without the express written consent of City Schools, and can only be done so in accordance with applicable privacy laws Vendor/Partner agrees to return to City Schools all such information within 15 days of the expiration of termination of this Agreement; or with the express

consent of City Schools, Vendor/Partner may destroy such information within 15 days of termination or expiration of this Agreement, certifying to City Schools in writing that the information has been destroyed.

Protection of Student Records:
Vendor/Partner and its affiliates or subcontractors, at their own expense, have a duty to and shall protect from disclosure any and all Student Records which they come to possess or control, wherever and however stored or maintained, in a commercially reasonable manner in accordance with current industry standards.

Each Vendor/Partner or its affiliates or subcontractors shall implement and maintain a comprehensive data - security program for the protection of Student Records whether the Records are stored electronically and/or in hard copy. The safeguards contained in such program shall be consistent with and comply with the safeguards for protection of Student Records, and information of a similar character, as set forth in all applicable federal and state law and written policy of the City Schools or Maryland State Board of Education ("MSBE") concerning the confidentiality of Student Records. Such data-security program shall include, but not be limited to, the following:

1) A process for reviewing policies and security measures at least annually;
2) A security policy for employees related to the storage, access and transportation of data containing Student Records;
3) Reasonable restrictions on access to records containing Student Records, including access to any locked storage where such records are kept;
4) Creating secure access controls to Student Records, including but not limited to passwords; and
5) Encrypting of Student Records that are stored on laptops, portable devices or being transmitted electronically.

The Vendor/Partner and its affiliates shall notify City Schools as soon as practical, but no later than twenty-four (24) hours, after they become aware of or suspect that any Student Records which Vendor/Partner or its affiliates possess or control have been subject to a Student Records breach.

The Vendor/Partner shall incorporate the requirements of this Section in all subcontracts requiring each of its affiliate to safeguard Student Records in the same manner as provided for in this Section.

Nothing in this Section shall supersede in any manner Vendor/Partner's or its affiliate's obligations pursuant to HIPAA, FERPA or the provisions of this Contract concerning the obligations of the Partner as a service provider to City Schools.

## H. DATA DISSEMINATION

For purposes of publicity, advertising, or news release in any form of medium, the parties shall confer with one another regarding the time, manner and content of appropriate data dissemination, results of studies or reports, or other materials, and consent to such dissemination.

## I. MUTUAL INDEMNIFICATION

Neither party shall assume any obligation to indemnify, hold harmless, pay attorneys' fees or damages

that may arise from or in any way be associated with the performance or operation of this agreement. Furthermore, the liability of the parties shall be governed by the terms and provisions of the applicable Tort Claims Act. Notwithstanding the foregoing, the Board will not defend or indemnify the vendor/partner in cases where any losses, expenses, or damages are caused by vendor/partner's own gross negligence or willful misconduct. This provision shall not be construed as a waiver of either party's rights under the doctrine of sovereign immunity, if applicable.

**J. APPLICABLE LAW**

This MOU shall be construed according to Maryland law and subject to the jurisdiction of its courts. Furthermore, the parties agree that any suits or actions brought by either party against the other shall be filed in a court of competent jurisdiction in Baltimore City.

**K. COMPLIANCE WITH LAWS.**

Both parties shall comply with all federal, state, and local laws, statutes, ordinances, rules, and regulations applicable to the services to be rendered under this Agreement. Any violation of these laws, statutes, ordinances, rules, or regulations constitutes a breach of this Agreement and entitles the non-breaching party to terminate this Agreement immediately upon delivery of written notice of termination to the breaching party.

**L. NON-DISCRIMINATION.**

Vendor/Partner shall not, in its conduct and performance under this Agreement, discriminate against any employee, applicant for employment, independent professional or any other person because of race, color, religious creed, ancestry, national origin, age, sex, sexual orientation, sexual identity, disability or handicap. Vendor/Partner shall comply with all state and federal laws prohibiting discrimination in hiring or employment opportunities. In the event of the Vendor/Partner's noncompliance with this non-discrimination clause or with any such laws, City Schools may terminate or suspend this agreement in whole or in part, and the Vendor/Partner may be declared temporarily ineligible for further contracts. City Schools reserves the right to impose any and all other legal sanctions and remedies available for violating this clause.

**M. PROFESSIONALS**

In the event the services to be provided by Vendor/Partner must by law be provided by individuals who are licensed and/or certified, Vendor/Partner shall only assign individuals to provide services under this Agreement who are licensed and/or certified in accordance with the law. Additionally, Vendor/Partner shall only assign individuals who have been credentialed by the Vendor/Partner to provide the specific professional services required by this Agreement. All such individuals assigned by Vendor/Partner to provide services shall maintain their license and/or certification in good standing (not under review or subject to suspension, credentials current) during the entire term of this Agreement. Vendor/Partner shall, prior to providing services, submit documentation that the individuals assigned to provide services are properly credentialed and are licensed and/or certified to the Director of Materials, 200 E. North Avenue, Baltimore, Maryland 21202.

**N. TERMINATION FOR CONVENIENCE**

Either party may terminate this MOU by giving to the other party written notification thereof at least

ten (10) days prior to termination.

**O. ENTIRE AGREEMENT**

This MOU consists of this Agreement, addenda, attachments, supplemental documents issued prior to execution other documents listed in this Agreement, and modifications and amendments issued after execution of this Agreement. The MOU constitutes the entire and full understanding between the parties hereto and neither party shall be bound by any representations, statements, promises or agreements not expressly set forth herein.

**P. INTERPRETATION**

The Agreement shall not be construed or interpreted for or against any party hereto because the party drafted or caused that party's legal representative to draft any of its provisions. Any heading of the paragraphs in this MOU is inserted for convenience and reference only and shall be disregarded in construing or interpreting this MOU. When interpreting the Agreement, the terms of this Agreement shall be controlling unless, specifically changed by an Amendment signed by the parties, all other documents shall be subordinate to the general terms of this Agreement.

**Q. SEVERABILITY**

Each provision of this MOU shall be deemed a separate, severable, and independently enforceable provision. The invalidity or breach of any provision shall not cause the invalidity or breach of the remaining provisions or of the MOU, which shall remain in full force and effect.

**R. MODIFICATIONS AND AMENDMENTS**

Any and all modifications to the terms of this Agreement must be by a written Amendment, signed and approved by all parties.

**S. ASSIGNMENT**

This Agreement shall be binding upon the parties hereto and their successors and assigns, except that neither shall assign their rights, duties or responsibilities set forth in this MOU without the express written consent of the other party.

**T. CONTRACT MONITOR**

Communications for the purposes of billing, payment and submission of documentation required by this Agreement shall be between the Board's Contract Monitor who is as follows:

| For the Board: | For the Vendor: |
| --- | --- |
| Ike Diibor | Lauren Rich |
| Name | |
| Coordinator, External Research | Senior Researcher |
| Achievement and Accountability Office | Chapin Hall at the University of Chicago |
| 200 East North Avenue | 1313 East 60th Street |
| Baltimore, Maryland 21202 | Chicago IL 60637 |
| (443) 642-4032 | (773) 256-5155 |
| idiibor@bcps.k12.md.us | lrich@chapinhall.org |

With a copy to:
Director of Materials Management
200 E. North Avenue, 4th Floor
Baltimore, Maryland 21202

With a copy to:
Counsel, Contracts and Compliance
1313 East 60th Street
Chicago, IL 60637

IN WITNESS WHEREOF, the parties have signed and sealed this Agreement as of the day first written above.

BALTIMORE CITY BOARD OF SCHOOL COMMISSIONERS

BY: ______________________

Dr. Gregory E. Thornton, Ed.D
Chief Executive Officer and
Secretary, Board of School Commissioners

PARTNER/VENDOR NAME

BY: ______________________

Lauren Rich

Please print name

APPROVAL BY CONTRACTS AND COMPLIANCE

Kristi Paskus, Counsel, Contracts and Compliance

APPROVED AS TO FORM AND LEGAL SUFFICENCY THIS 20th DAY OF July, 2015.

OFFICE OF LEGAL COUNSEL
Shawn A. Mitroff

APPROVAL OF THE DIRECTOR OF MATERIALS MANAGEMENT

Jeffrey D. Parker

Revision, March 13, 2015

ATTACHMENT I

ROLES AND RESPONSIBILITIES

**Role and Responsibilities of the Vendor:**

See attachment.

**Role and Responsibilities of City Schools**

**Roles and Responsibilities of the Vendor**

**Title and Purpose of Study:**
The title of the study is "Impact of the Elev8 Baltimore Initiative on Student Academic Outcomes". The purpose of the study is to assess the extent to which the Elev8 Baltimore community schools initiative might have had a causal impact on student academic outcomes (i.e. attendance, grades, test scores, on-time grade advancement, and suspensions and expulsions). The overall objective is to increase knowledge about Elev8's impact and generate information that will improve programming locally and inform the national conversation about the community schools approach.

**Description of intervention:**
The Elev8 Baltimore initiative has been operating in four East Baltimore schools since the fall of 2009. It provides supports and services to middle school students (grades 5-8) and their families in order to improve students' academic outcomes. Supports and services concentrate on three main areas: (1) extended-day learning and academic enrichment activities; (2) comprehensive preventative and primary healthcare services; and (3) outreach to families and provision of connections to public benefits and other services (family supports).

**Research Questions:**
We seek to address the following questions:
1) Do 5th – 7th graders attending Elev8 schools after the introduction of Elev8 have better outcomes than 5th – 7th graders attending the same schools before the introduction of Elev8?
2) Do students who attend Elev8 schools have better outcomes in middle school than comparable students attending other Baltimore public schools?

**Details on data requested:**
Universe: All students ever enrolled in BCPS in the 5th, 6th, 7th or 8th grades during the 2004-2016 school years.

Student identifiers: Student ID number

Student-level demographic data: School(s) attended, Grade, Race/ethnicity, Free/reduced lunch status, IEP status, Limited English Proficiency status, Gender, Date of birth, Zip code

School-level demographic data: School name, Racial/ethnic distribution, Percent of students receiving free/reduced lunch, Percent of students with IEPs, Percent of students with Limited English Proficiency, Percent of students who have moved in/out of school, Staff turnover rate, Attendance rate, Percent of students suspended/expelled, Average test scores

From the BCPS School Survey: Learning Climate Scale, School Resources Scale, School Safety Scale, Teacher Scale

Student outcomes data (*for all available grades for each student, up through 8th grade):
On-time grade advancement: Promotion status
Attendance (at each school): Days attended, Days absent, Days not belonging, Days enrolled
Test scores: Maryland School Assessment (MAS) reading and math scores, Benchmark assessment scores
Grades: Core course grades
Behavior/discipline: Discipline infractions, Number of suspensions/expulsions

# BALTIMORE CITY
## PUBLIC SCHOOLS

| | | | |
|---|---|---|---|
| **JOB TITLE:** | Educational Specialist II - Strategic Climate Support | | |
| **DIVISION:** | School Support | **JOB CODE:** | 110274 |
| **DEPARTMENT:** | Climate and Suspension | **AFFILIATION:** | PSASA |
| **DATE DEVELOPED:** | 05-27-15 | **GRADE:** | 960-962 |
| **REVISION DATE:** | | **OVERTIME STATUS:** | Exempt |

| | |
|---|---|
| **REPORTS TO:** | Coordinator- Strategic Climate Intervention |
| **SUPERVISOR'S SUPERIOR:** | Director- Climate and Suspension |
| **POSITIONS SUPERVISED:** | None |

**Related positions are contingent on board approval.**

**JOB SUMMARY**

Educational Specialists II - Strategic Climate Support is educational professionals who are passionate about improving student academic performance through the transformation of school climate and culture within Baltimore City Public Schools (City Schools). They draw upon their extensive background and vast experience in education to serve as climate experts, coaches, and thought leaders within schools. School climate specialists are dedicated to the improvement of school climate and culture, which enables them to provide constructive feedback and engage in strategic problem-solving related to school climate. They should possess strong consensus building and analytical skills and be able to motivate and inspire a diverse group of stakeholders toward a common goal. School climate specialists collaborate with school staff, school leadership, and district leadership to implement strategies and programs designed to create and sustain positive school culture and climate.

School climate specialists facilitate school and district development opportunities that model best practices for school leaders, staff, and families in developing academic, social, and emotional supports for students. They also serve as liaisons between students and teachers and administrators.

All applicants should have strong knowledge of school turnaround principles and an understanding of educational policy and practice.

**PERFORMANCE RESPONSIBILITIES: ESSENTIAL FUNCTIONS**

Serves as a climate and culture leader in collaboration with school and district leadership:

- Fosters a collaborative school culture to support student development and learning by establishing a process for collaboration, modeling best practices in climate and culture to advance shared goals and professional learning, building ownership and action among school stakeholders that support student learning and use knowledge and understanding of different backgrounds, ethnicities, cultures, and languages to promote effective interactions.
- Collaborates closely with district support staff to ensure effective implementation of district initiatives related to school climate and culture.
- Keeps abreast of the latest research about school climate and culture through independent research and participation in district professional development.
- Successfully implements protocols, procedures, and best practices modeled in professional development.

- Models continuous learning and reflective practice for colleagues. The climate lead works collaboratively with school staff to constantly improve school climate and culture practices.

Develops and implements culture and climate programming and accompanying measurement tools:

- Collaborates with school leaders and other colleagues to address culture and climate challenges. Utilizes district training and expert knowledge to model for team meetings, teacher support, and coaching protocols.
- Works collaboratively with school and district leaders to develop a strategic implementation plan for improving climate and culture.
- Implements culture and climate readiness processes across assigned school.
- Works with district leaders and school data leader to develop a system for measuring culture and climate improvements (i.e., attendance, suspension, immunization, etc.).
- Works with administration to ensure implementation and accuracy of disciplinary systems.
- Implements detailed systems that ensure an effective school day (i.e., classroom transitions, morning arrival, end-of-day departures, school-wide transitions, cafeteria protocols, playground/recess protocol, etc.).
- Identifies at-risk students and works with Student Support Teams (SST) to ensure proper support.
- Acts as a liaison between school leaders, students, and district leaders to ensure effective communication.
- Maintains documentation to track and monitor progress.
- Identifies community partners to supplement student and school support needs as needed.
- Maximizes full parent and community engagement for high priority school events.

Provides on-going professional development to all stakeholders:

- Designs and facilitates job-embedded professional development opportunities that are aligned with school climate goals and district priorities.
- Provides professional development to school stakeholders designed to increase their skill level in developing academic, social, and emotional support for students.
- Plans and facilitates weekly team meetings focused on discussion and evaluation of student growth and teachers' use of school climate and culture strategies.

**QUALIFICATIONS**

- Master's degree in social work, psychology, counseling or related field preferred. Degree must be from an accredited college or institution.
- A valid Maryland State Department of Education teaching certificate; Advanced Professional Certificate preferred.
- Minimum of three years of educational experience or minimum of five years of experience as a social worker, psychologist or counselor.
- Demonstrated knowledge of school climate and culture principles.
- Demonstrated experience in consensus building.
- Ability to motivate and inspire a diverse set of stakeholders toward a common goal.
- Three years of experience in creating and providing professional development (PD) and/or facilitating team meetings.
- Excellent verbal and written communication skills.
- Knowledge of laws, regulations, rules and policies affecting City Schools' educators.
- Valid Class C Noncommercial driver's license and daily access to personal transportation.

**PERFORMANCE RESPONSIBILITIES: OTHER DUTIES AND RESPONSIBILITIES**

- Performs other related duties as assigned.

**PHYSICAL DEMANDS**

- Light work, exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently.

**WORK ENVIRONMENT**

- Not substantially exposed to adverse environmental conditions.

**EVALUATION**

- Performance of this position will be evaluated in accordance with the provisions of the applicable Board policy and or administrative regulations.

**NOTICE OF NONDISCRIMINATION**

- Baltimore City Public Schools does not discriminate in any aspect of employment on the basis of race, color, ancestry or national origin, religion, sex, sexual orientation, gender identity, gender expression, marital status, disability, veteran status, genetic information, or age. For inquiries regarding the nondiscrimination policies, please contact the Equal Employment Opportunity Manager, 200 E. North Avenue, Room 208, Baltimore, MD 21202; 410-396-8542 (phone); 410-396-2955 (fax).

The above is intended to describe the essential content of and requirements for the performance of this job. It is not to be construed as an exhaustive statement of duties, responsibilities or requirements.

| | | | |
|---|---|---|---|
| Linda Chen<br>Chief Academic Officer | Date | Lisa Grillo, Ed.D.<br>Chief ~~Human~~ Capital Officer | 5/27/2015<br>Date |

# EXHIBIT E

## PERSONNEL FILES

FOR

LANA MOORE

[redacted]

LANA MOORE CASE

# BALTIMORE CITY PUBLIC SCHOOLS

**Stephanie Rawlings-Blake**
*Mayor, City of Baltimore*

**Marnell A. Cooper**
*Chair, Baltimore City Board of School Commissioners*

**Gregory E. Thornton, Ed.D.**
*Chief Executive Officer*

October 23, 2015

Assignment Continuation Notice

[redacted]

This letter is to notify you that your assignment will be extended through October 30, 2015. Please continue to report to your current assignment unless you receive notification of a change in assignment from the Office of Human Capital.

This assignment and notification is in accordance with the applicable laws and negotiated agreements between City Schools and the applicable unions.

Should you have further questions, please contact Patricia Johnson at pcjohnson@bcps.k12.md.us or (410) 396-8885.

Sincerely,

Deborah T. Sullivan
Interim Chief Human Capital Officer

C: Linda Chen
Patricia Johnson
Personnel File

# BALTIMORE CITY PUBLIC SCHOOLS

**Stephanie Rawlings-Blake**
*Mayor, City of Baltimore*

**Marnell A. Cooper**
*Chair, Baltimore City Board of School Commissioners*

**Gregory E. Thornton, Ed.D.**
*Chief Executive Officer*

October 23, 2015

Assignment Continuation Notice

[redacted]

This letter is to notify you that your assignment will be extended through October 30, 2015. Please continue to report to your current assignment unless you receive notification of a change in assignment from the Office of Human Capital.

This assignment and notification is in accordance with the applicable laws and negotiated agreements between City Schools and the applicable unions.

Should you have further questions, please contact Patricia Johnson at pcjohnson@bcps.k12.md.us or (410) 396-8885.

Sincerely,

Deborah T. Sullivan
Interim Chief Human Capital Officer

C: Linda Chen
Patricia Johnson
Personnel File

# BALTIMORE CITY
## PUBLIC SCHOOLS

Stephanie Rawlings-Blake
*Mayor, City of Baltimore*

Shanaysha M. Sauls, Ph.D.
*Chair, Baltimore City Board of School Commissioners*

Gregory E. Thornton, Ed.D.
*Chief Executive Officer*

May 27, 2015

[redacted]

As a result of Baltimore City Public Schools (City Schools) realignment of district office positions and corresponding fiscal year 2016 (FY16) budget, your current position has been identified for elimination. It is with regret that I must inform you that your current position will be eliminated on June 30, 2015. This elimination is the result of budgetary constraints and is not a reflection of your performance or employability with City Schools.

The Office of Human Capital will provide all displaced district office employees with information on available FY16 budgeted positions. We strongly encourage you to review and apply for any positions for which you are qualified and that interest you.

The Office of Human Capital also encourages you to review all of your information in Employee Self-Service to ensure that all of your certification, education and contact information are current.

You will remain employed in your current position until June 30, 2015. This means that you should continue to report to work. Should you find a new position with City Schools prior to June 30th, you will have no break in employment. Should you not find a funded 2016 position before the end of the current fiscal year, employment will terminate on June 30, 2015.

If you are part of a collective bargaining unit, please refer to your contract for information regarding recall rights. An Employee Transition Guide has been provided to assist you through this change.

Please contact City Schools' Employee Assistance Program at www.achievesolutions.net/bcpss or1-866-529-8063 about any personal concerns you might have.

Sincerely,

Lisa M. Grillo, Ed.D.
Chief Human Capital Officer

5/27/15

200 East North Avenue • Baltimore, Maryland 21202 • Visit us on the web at www.baltimorecityschools.org

BALTIMORE CITY
PUBLIC SCHOOLS

**Stephanie Rawlings-Blake**
*Mayor, City of Baltimore*

**Marnell A. Cooper**
*Chair, Baltimore City Board of School Commissioners*

**Gregory E. Thornton, Ed.D.**
*Chief Executive Officer*

December 18, 2015

[redacted]

This letter is sent to confirm the termination of your position with Baltimore City Public Schools as of October 31, 2015. Per our payroll records, your leave balance was converted and paid out on November 23, 2015. Additionally, you should have received a COBRA Continuation Coverage Election Notice to apprise you of your health benefits options moving forward. If you have not received those documents, please notify Talent Support Services Director Patrick Keating.

This notification is in accordance with Baltimore City Public Schools Board Policies and Procedures.

Should you have further questions, please feel free to contact me at dtsullivan@bcps.k12.md.us or (410) 350-4775.

Sincerely,

Deborah T. Sullivan
Interim Chief Human Capital Officer

C: Linda Chen, Chief Academic Officer
Patricia Johnson, Director, Employee and Labor Relations
Personnel File

# BALTIMORE CITY
## PUBLIC SCHOOLS

Stephanie Rawlings-Blake
*Mayor, City of Baltimore*

Shanaysha M. Sauls, Ph.D.
*Chair, Baltimore City Board of School Commissioners*

Gregory E. Thornton, Ed.D.
*Chief Executive Officer*

September 10, 2014

[redacted]

We are pleased to offer you the position of Deputy Chief Academic Officer in Org. No. 0520 - Chief Academic Officer, effective September 22, 2014. Your annual salary will be [redacted] This position is not affiliated with any bargaining unit. You will receive benefits associated with this unaffiliated position.

If you have prior years of service with the State Retirement system, please contact Joyce Cooper in the Human Capital Retirement office at 410-396-8885 PRIOR to signing this offer letter.

As a reminder, your continued assignment to this position is contingent upon successfully passing the Maryland SLLA Praxis II test to obtain your Administrator II certification. Please provide your trajectory and program enrollment verification no later than March 22, 2015. The trajectory submitted should conclude with completion of coursework required for Administrator II certification by June 22, 2015. If you have any questions regarding your certification status with City Schools, please email Tamara DeShields-Burns, Manager of Certification, at tdburns@bcps.k12.md.us or call 410.396.8885.

Please indicate your acceptance or declination by signing the appropriate line below:

[redacted]

Accept: Signature & Date          Decline: Signature & Date

Return the original letter with your signature within 48 hours to the Office of Compensation, 200 E. North Avenue, Room 110, Baltimore, Maryland 21202. If you accept the position, you must follow the Pre-Employment process below.

- An orientation meeting has been scheduled for you on September 16, 2014 at 8:30 a.m. in Room 120 at our City Schools Headquarters located at 200 East North Avenue, Baltimore, MD 21202. Prior to the meeting, please log onto www.newi9.com and enter code 12320 to update your I9 information.
- Please bring the following documents with you to your orientation meeting:

- This letter
- Social Security Card
- State issued Photo-Identification Card or Driver's License
- Voided personal check (for direct deposit of your pay)

Be prepared to stay at least two hours the orientation meeting to complete your personnel forms and to receive health insurance and other benefits information. If you have any questions prior to your appointment, please call Damon Robinson at 443-642-4067. Your continued employment is contingent upon the successful completion of a criminal background check, and upon receiving medical clearance. If you fail to meet any of these requirements, your employment will be terminated.

On behalf of the Office of Human Capital and all of the Baltimore City Public Schools employees, we extend to you our best wishes in your new assignment.

Sincerely,

Lisa Grillo, Ed. D.
Chief Human Capital Officer

tw/ja

MARYLAND STATE RETIREMENT AGENCY
120 EAST BALTIMORE STREET
BALTIMORE, MD 21202-6700

## APPLICATION FOR MEMBERSHIP

FOR RETIREMENT USE ONLY FORM 1 (REV. 3/12)

IMPORTANT: PLEASE READ THE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.

### SECTION ONE — TO BE COMPLETED BY APPLICANT

APPLICANT'S SOCIAL SECURITY NUMBER [redacted] GENDER (M or F) [redacted] DATE OF BIRTH [redacted]

APPLICANT'S NAME: [redacted]

HOME ADDRESS: [redacted]

1. Have you ever been a member of the Maryland State Retirement and Pension System? ....Yes ☐ No ☑
2. Have you ever been a member of the Optional Retirement Plan (ORP)? ....Yes ☐ No ☑
3. Are you presently receiving a retirement allowance from the Maryland State Retirement and Pension System? ....Yes ☐ No ☑
4. Are you presently a member of another State or local retirement or pension system operated under the laws of Maryland or any political subdivision of Maryland? ....Yes ☐ No ☑
   IMPORTANT: If yes, read carefully the transfer provisions on the back of this form and then initial here: ________.
5. Have you attached acceptable proof of birth date as described on the back of this form? ....Yes ☑ No ☐

**I certify that all statements made on this application are correct. I authorize any required deductions from my salary at the prescribed rate. And if I am presently a member of another State or local retirement or pension system, I have read and understand the transfer provisions.**

[redacted] Applicant's Complete Signature Date 9/16/2014

### SECTION TWO — TO BE COMPLETED BY RETIREMENT COORDINATOR

A. IS THE APPLICANT A PERMANENT EMPLOYEE? ....Yes ☑ No ☐
   If part-time, what percentage of time is the applicant employed? ....________ percent
B. When did applicant begin present continuous service? ....Month 09 Day 22 Year 2014
C. What is the applicant's complete job classification or title? Deputy Chief Academic Officer
D. Is applicant's current position Optional Retirement Plan (ORP) eligible? ....Yes ☐ No ☑
   If yes and the applicant checked "Yes" to question 2 above (individual previously participated), STOP and complete Form 60 *Election Not to Participate in the Teachers'/Employees' System by Faculty or Administrative Officers of Institutions of Higher Learning.*
E. What is the applicant's annual salary? [redacted] What is the applicant's annual standard hours? 2080
F. If applying for membership in the Law Enforcement Officers' Pension System, does the applicant meet the eligibility requirements? ....Yes ☐ No ☑
G. If the applicant is eligible to request a transfer of service credit between retirement or pension systems as a result of this new employment, have you reviewed the transfer provisions on page two with the applicant? ....Yes ☐ No ☑

INDICATE SYSTEM: ☑ Teachers' Pension ☐ Employees' Pension ☐ Correctional Officers' Retirement ☐ State Police Retirement ☐ Law Enforcement Officers' Pension

| EMPLOYING AGENCY CODE | # OF RETIREMENT CONTRIBUTIONS DEDUCTED PER FISCAL YEAR | SYSTEM | FOR RETIREMENT USE ONLY |
| --- | --- | --- | --- |
| 6701/0000 | 20 | 06 | MO DAY YEAR ENTRANCE DATE |

Joyce Cogan 9/23/14 Retirement Coordinator's Complete Signature/Date

410.396.8885 Telephone #

MARYLAND STATE RETIREMENT AGENCY
120 EAST BALTIMORE STREET
BALTIMORE, MARYLAND 21202-6700

# DESIGNATION OF BENEFICIARY

IMPORTANT: Please return completed form to the address listed above. Print clearly and read the instructions first. Fill in all sections. Retain a copy for your records.

FOR RETIREMENT USE ONLY FORM 4 (REV. 6/14)

APPLICANT'S SOCIAL SECURITY NUMBER [redacted]

CHECK ONE: ☑ Active ☐ Vested ☐ Retired (If retiring, retirement date ____)

**IMPORTANT:** If you are retired under Option 2, 3, 5 or 6, STOP. You cannot use this form. You must complete a Form 66 to initiate any beneficiary changes.

APPLICANT'S NAME [redacted]
First Initial Last

HOME ADDRESS [redacted]
City State Zip Code

PRIMARY BENEFICIARY(IES) All money shall be paid in equal shares to the primary beneficiary(ies) who are living at the time of my death.

☐ Check if you used an additional Form 4 to name additional primary beneficiaries.

[redacted]

BENEFICIARY'S NAME ____ RELATIONSHIP ____ Gender: ____ (M or F) Birthdate: ____ Month Day Year
First Initial Last
BENEFICIARY'S ADDRESS ____

CONTINGENT BENEFICIARY(IES) If all primary beneficiaries die before me all money shall be paid in equal shares to the following person(s) who are living at the time of my death.

☐ Check if you used an additional Form 4 to name additional contingent beneficiaries.

BENEFICIARY'S NAME ____ RELATIONSHIP ____ Gender: ____ (M or F) Birthdate: ____ Month Day Year
First Initial Last
BENEFICIARY'S ADDRESS ____

BENEFICIARY'S NAME ____ RELATIONSHIP ____ Gender: ____ (M or F) Birthdate: ____ Month Day Year
First Initial Last
BENEFICIARY'S ADDRESS ____

TO THE MARYLAND STATE RETIREMENT AGENCY: I authorize the Maryland State Retirement Agency to pay the death benefit to my designated beneficiary or beneficiaries. I agree on behalf of my estate, heirs and assigns that the payment made by the agency will release the agency from any further obligation regarding this benefit. I direct the agency to pay the death benefit to my estate if I have not designated any beneficiary or if all of the primary and contingent beneficiaries I have named die before me. I understand that I may change beneficiaries at any time by filing a new Des[redacted]signation of Beneficiary form I file will replace this form. I understand certain payment due to a minor shall be [redacted]RY PUBLIC. (Form not valid unless notarized.)

Signature [redacted] Date Signed 9/16/2014

[redacted] must be signed and notarized in order to be valid.

Please check (✓) for your system:
( ) 1 Teachers' Retirement System
( ) 2 Employees' Retirement System
( ) 2C Correctional Officers' Retirement System
( ) 3 State Police Retirement System
(X) 6 Teachers' Pension System (Incl. Bifurcated)
( ) 7 Employees' Pension Sys. (Incl. Bifurcated)
( ) 8/9 Law Enforcement Officers' Pension System

State of Maryland County of Baltimore (or City of Baltimore) On this 16th day of September 20 14, before me, the undersigned officer, personally appeared [redacted], known to me
NAME OF PERSON WHOSE SIGNATURE IS BEING ACKNOWLEDGED *
(or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that (he/she) executed the same for the purposes therein contained. In witness whereof I hereunto set my hand and official seal.
Signature of Notary Public [signature]
Printed Name of Notary Public Joyce Cooper My Commission Expires 2/2/16

Official Seal must be affixed

* IMPORTANT: If the name of the individual whose signature is being acknowledged is not filled in, this form will be INVALID and have no legal effect.

GREAT KIDS GREAT SCHOOLS

# Employee Data Form

Baltimore City Public Schools
Office Of Human Capital
200 E. North Avenue, Room 110
Baltimore, Maryland 21202
www.BaltimoreCitySchools.org

New /Rehire employees are required to complete this form as part of the verification of eligibility for employment and to build an employee record. Please sign and date at the end of the form to verify that everything on this form is accurate.

[redacted]

Social Security Number: [redacted]

Home Address Apt City State

[redacted]

Do you have previous service time in one of the following retirement systems?
Maryland State Retirement System ☐ Yes ☑ No
Baltimore City Employee's Retirement System ☐ Yes ☑ No

**Rehired Retiree** ☐ Yes ☑ No

**DEMOGRAPHIC INFORMATION:**

Date of Birth: [redacted]

Marital Status:
☑ Married
☐ Divorced
☐ Single
☐ Widowed

Gender:
☑ Male
☐ Female

Ethnicity:
Are you Hispanic/Latino? ☐ Yes or ☑ No

Select one or more races from the 5 racial groups listed below:
☐ American Indian or Alaska Native
☐ Asian
☑ Black or African American
☐ Native Hawaiian or Other Pacific Islander
☐ White

**Visa Information:**

Visa Type: ______ Visa Number ______
[redacted] Expiration Date: ______ Visa Category ______

Employee Signature [redacted] Date 9/16/14

*Official Use Only*

I-9 Status:
☐ Alien Authorized to Work
☐ Lawful or Permanent Resident
☐ Citizen or National of the US
☐ Pending INS Receipt Received

I-9 Expiration Date: (DD-MMM-YYYY) ______

*Official Use Only* Date of Hire: Day ____ Month ____ Year ____ ☐ New Hire ☐ Rehire

Person Type:
☐ Employee
☐ Retiree COB
☐ Retiree Waiver 2%
☐ Substitute Teacher
☐ Work Study
☐ Volunteer
☐ Retiree CAP
☐ Retiree HB962
☐ Satellite Employee
☐ Temporary Employee
☐ Coach ☐ Contractor/Consultant ☐ Intern ☐ Mentor ☐ Tutor

Employee ID 64564

LOADED INTO ORACLE
SEP 19 2014

Revised 12-3-2012

M@ S ∅ $100./∅ 1

GREAT KIDS GREAT SCHOOLS

# Assignment Form

Baltimore City Public Schools
Office of Human Capital
200 E. North Avenue, Room 110
Baltimore, Maryland 21202
www.Baltimorecityschools.org

[redacted]

Social Security Number: [redacted]

Organization: 0520 | Position Number: 171533 | Grade/Step: OFF002 [redacted]

Rehired Retiree ☐ Yes ☐ No

Assignment Category:
- ✓ Fulltime-Regular
- ☐ Partime Regular – Benefits Eligible
- ☐ Parttime-Regular Not Eligible for Benefits
- ☐ Parttime Temporary

Subject Taught:

Supervisor:

Substitute Level Certification:
- ☐ 30 College Credits or More (Less than Bachelors Degree)
- ☐ Bachelors Degree - Maryland Teacher Certified
- ☐ Masters Degree NOT Certified
- ☐ High School Diploma – Principal Recommends

Special Education Qualified Rate: ☐ Yes ☐ No
- ☐ 60 College Credits or Associates Degree
- ☐ Bachelors Degree NOT Certified
- ☐ Masters Degree – Maryland Teacher Certified

School: ____

**Special Information Tabs**

**Bargaining Unit:**

☐ AFT ☐ BTU ☐ CUB ~~☐ GSS~~ ✓
☐ PSASA ☐ PARAS ☐ L44

Unit Date (DD-MM-YYYY) ____

Certification Type: ____ HQ: ☐ Yes ☐ No

Issue Date: ____ Expiration Date: ____

Primary Area: ____

**Education: (Documented from Official Transcript)**

Degree: Doctorate's Educational Leadership

Major: ____ Minor: ____

School/University: Ashland GPA Degree: ____ GPA Major: ____

Graduation Date: Day ____ Month ____ Year 2006

HQ Paraprofessional: __ ☐ Yes ☐ No Passed ParaPro: ☐ Yes ☐ No ParaPro Score ____

**Licenses: Required for all Related Service Providers**

Type: ____ Issuing Agency: ____

License Number: ____ License Issue Date: ____

License Expiration Date: ____ Issuing State: ____

BCPSS Permit Number: ____ Permit Issue Date: ____

Permit Expiration Date: ____

**Prior Work Experience: MSDE JOB CODE 08 thru 24**

Select one experience type only - enter all required data:

1. __ No Prior Experience — Previous State of Residency ____
2. ✓ Nonpublic Experience — State Previously Employed: PA; Year Last Employed: 2014; Previous State of Residency: VA; Years of Previous Experience: 15
3. __ Public Experience — MD County or State Previously Employed ____; Year Last Employed ____; Previous State of Residency ____; Years of Previous Experience ____

LOADED INTO ORACLE
SEP 19 2014

STAFFING: ____ Date: ____ HRIS: JBurrell Date: ____

Revised 12-3-2012

GREAT KIDS
GREAT SCHOOLS

**Baltimore City Public Schools**
Office of Human Capital
Employee Services
200 E North Ave, Room 120
Baltimore, MD 21202
Phone: 410.396.8731
Fax: 410 545.0897

## CRIMINAL BACKGROUND AND MEDICAL CLEARANCE

**To:** Prospective Employee

**From:** Director, Support Services
Office of Human Capital

Please read information below, sign form and bring it with you to your employment processing and orientation session.

Medical and criminal background clearance is a requirement for employment with the Baltimore City Public Schools. Your continued employment is contingent upon receiving medical and criminal background clearance from an organization authorized by the Baltimore City Public Schools. If you fail to receive medical and criminal background clearance, your employment shall be terminated.

It is understood that you have the right to request testing of a split sample of the specimen you provide at the time of your physical. The testing of the sample must be performed by a laboratory of your choice and at your expense. Should the sample be confirmed as positive of any illegal substance the decision will remain to withdraw the offer of employment.

***I HAVE READ THE INFORMATION CONTAINED HEREIN AND UNDERSTAND THAT MY CONTINUED EMPLOYMENT IS CONTINGENT UPON MY OBTAINING MEDICAL CLEARANCE AND A SATISFACTORY CRIMINAL BACKGROUND CHECK.***

Employee's Signature [redacted] Date 9/16/2014

*N0094, Criminal Background and Medical Clearance, 04/22/2010*