IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LANA MOORE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. SAG-19-00154 |
| | * | |
| BALTIMORE CITY BOARD OF SCHOOL COMMISSIONERS, | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Lana Moore ("Moore") filed this action against her former employer, the Baltimore City Board of School Commissioners ("BCBSC"), asserting claims for race discrimination, age discrimination, retaliation, and intentional infliction of emotional distress. BCBSC has filed a Motion for Summary Judgment ("the Motion"), ECF 39. Moore filed an opposition. ECF 40. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, BCBSC's Motion will be granted in part and denied in part.

### I.   FACTUAL BACKGROUND[1]

BCBSC hired Moore as a school facilitator after she had served for two years as a school principal. ECF 39-1 at 19:6-20:15. She served as a facilitator for three years. *Id.* at 23:6-8. During the 2014-2015 school year, Moore learned that her school district would experience a reduction in

---

[1] BCBSC attached just one substantive exhibit to its Motion, consisting of excerpts from Moore's deposition. ECF 39-1. In response, Moore attached her own answers to interrogatories, ECF 40-1, BCBSC's answers to interrogatories, ECF 40-2, and the file from the EEOC proceeding. ECF 40-3. Although some of the contents of Moore's exhibits may constitute inadmissible hearsay at trial, BCBSC did not reply to Moore's opposition or object to this Court's consideration of that evidence in adjudicating this motion. The factual summary herein, then, is derived from those uncontroverted exhibits.

force, including the elimination of all ten facilitator positions. ECF 39-1 at 25:1-10; ECF 40-1 at 6. Moore, who is Caucasian, was approximately sixty-five years old at the time of the reduction in force. ECF 39-1 at 4:16-17, ECF 40-3 at 21.

On or about June 1, 2015, Moore interviewed with Dr. Bundley and Dr. Garnett for one of four positions of Educational Specialist 2. ECF 40-1 at 7. The interview was "exemplary," according to one of the interviewers. *Id.* Moore asked the Deputy Chief Academic Officer, Dr. Theodore Thompson, when she would hear the results of the interview, but received no response. ECF 40-1 at 7. Eventually, Dr. Thompson told her that three of the four positions had been filled by Human Capital based on the interview scores. *Id.* Moore learned that her interview score had not been submitted to Human Capital, and the interview sheet actually reflects that she did not interview. *Id.* Instead, the fourth position went to a younger, African-American candidate. *Id.*

BCBSC informed the outgoing facilitators that five Manager-School Operations Support positions would replace the ten facilitator positions. ECF 39-1 at 25:16-26:1; ECF 40-1 at 6. At least five other facilitators, in addition to Moore, applied for the Manager-School Operations Support positions when first posted. ECF 39-1 at 27:1-8. On June 7, 2015, Moore learned that other facilitators had been invited to interview, but she had not. ECF 40-1 at 6; ECF 39-1 at 34:6-10. Moore complained to Human Capital that she had not been called to interview. *Id.* at 34:12-18. She belatedly received an invitation to interview in the first round. *Id.* at 36:18-19.

All of the other candidates were interviewed on June 8, 2015, and Moore's interview took place on June 11, 2015. ECF 40-1 at 6. Her interview was conducted by a different panel than that which had interviewed the other applicants. ECF 40-1 at 6; ECF 39-1 at 92:1-11, 92:19-21 Moore's interview score was higher than that of at least one other applicant, Stacy Walton, who is younger and African-American. ECF 40-1 at 6, 14. Offers were extended to five interviewed

African-American applicants who had been offered interviews originally, but no offer was extended to Moore. *Id.* at 14. One of the persons selected had not been a facilitator, and in fact had never held a school-based position with BCBSC. ECF 40-1 at 16. Other persons selected had less relevant experience than Moore. ECF 40-3 at 11 ¶ 20. When one of the five successful applicants declined to accept the job, rather than offering the position to Moore, BCBSC announced another round of interviewing. ECF 40-1 at 6. Walton and Moore were interviewed again, along with approximately 30 candidates, some of whom had not interviewed in the first round. *Id.*

Moore's second interview occurred the day after her first interview, on June 12, 2015. ECF 39-1 at 41:11-14. During her second interview, the lead interviewer, Dr. Thompson, left the room to take two phone calls. *Id.* at 49:16-20. Moore was only asked three questions. *Id.* at 51:2-6. The panel conducting interviews on that date awarded Moore a lower score than Walton, and the job was awarded to Walton, who had the higher combined score from the two interview sessions. ECF 40-1 at 6. Walton had not been a successful facilitator, and in fact had been removed from that position and was serving as Dr. Thompson's assistant. *Id.* at 7. Walton is young and African-American. *Id.* at 6-7. Moore suggests that the second round of interviews was a "sham" for the purpose of increasing Walton's interview score to award her the position. *Id.* at 15.

The last BCBSC position Moore interviewed for was Education Specialist – 12 months. ECF 40-1 at 14. Moore received an 82 as her interview score, but BCSPC selected an applicant who received a 75. ECF 40-3 at 13 ¶ 30; ECF 40-1 at 14. Moore was unemployed for nine months before obtaining a position with a new company. ECF 39-1 at 69:1-2.

## II.   LEGAL STANDARDS

BCBSC seeks summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts,

including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

A party supporting or opposing summary judgment must provide support for its position by "citing to particular part of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). If a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

### III. ANALYSIS

The Motion seeks summary judgment as to all four counts of the Complaint. Each count will be addressed in turn.

#### A. Title VII Race and Age Discrimination

Moore alleges that her Title VII rights were infringed because she suffered race discrimination (Count I) and age discrimination (Count II). *See* ECF 1 at 1 ("This is an employment civil rights case involving deprivations of rights made actionable pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* and discharged in retaliation for engaging in protected activities in violation of Title VII."). Although Moore attempts to allege discrimination based on both her race and her age, "Congress chose not to include age within discrimination forbidden by Title VII." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 586 (2004); *see Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 465 n.4 (1982)

(noting that "age discrimination . . . is not covered by Title VII"). Moore's Complaint makes no reference to, and does not assert a claim under, the Age Discrimination in Employment Act ("ADEA"). Thus, summary judgment is appropriate as to her age discrimination claim in Count II.

Race discrimination, though, is covered by Title VII, which renders it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can prove discrimination "either through direct evidence of discriminatory intent or by using the four-part *McDonnell Douglas* scheme which provides an inference of discriminatory intent." *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227-28 (4th Cir. 1998).

Moore has not adduced any direct evidence of race-based discrimination. Therefore, "in order to prove a prima facie case of discriminatory failure to hire or promote under Title VII, a plaintiff must prove that: (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998). If that prima facie case is established, the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for its adverse employment action. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the employer carries that burden, "the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported reasons 'were not its true reasons, but were a pretext for discrimination.'" *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted

justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

With respect to the Manager-School Operations Support position, Moore's Title VII claim survives summary judgment. Moore is a member of a protected class, because Title VII protects all persons from race-based discrimination. The parties agree that she was meeting the reasonable expectations of her employer at the time of the reduction in force, ECF 40-2 at 4, and that she was an eligible applicant for the position she sought. ECF 40-3 at 26. Moore has adduced evidence that she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination: all of the persons selected were African-American, and at least one, and possibly more, facially appeared to have less relevant experience for the job. BCBSC has proffered evidence of a non-discriminatory reason for its hiring decisions—specifically the candidates' respective interview scores. However, Moore has met her burden to proffer sufficient evidence of pretext to create a genuine issue of material fact: the fact that, unlike other African-American facilitators, she was not originally offered a first round interview; the fact that she was put through a "second interview" process allowing an African-American candidate who had scored lower than Moore in the first round to surpass her score; and the fact that, for a subsequent position, a candidate was awarded the job over Moore although Moore had the higher interviewing score.[2] Thus, there is a genuine issue of material fact regarding whether Moore was subjected to race-

---

[2] Because Moore did not establish the race of the successful candidate for the later job, she has not created a genuine issue of material fact as to race discrimination affecting that particular position. The situation remains relevant, however, because it undermines the suggestion that BCBSC's hiring decisions are exclusively based on interview scores. Similarly, some of Moore's experiences with interviewing for other positions, such as the situation where she was not given a computer or told about the writing sample and the situation where her "exemplary" interview was disregarded, might be relevant to establishing BCBSC's manipulation of interview scoring to obtain its desired results.

based discrimination in the hiring decision, and summary judgment is not warranted as to that claim.

### B. Retaliation

Count III alleges a claim for retaliation under Title VII. Retaliation requires evidence "(1) that [plaintiff] engaged in a protected activity, (2) that the employer took a materially adverse action against him, and (3) [that] there is a causal connection between the protected activity and the adverse action." *Perkins v. Intern. Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019). As with her claims for status-based discrimination, Moore fails to allege any direct evidence to substantiate retaliation, such as comments made to her by supervisors or hiring authorities to suggest that they were aware of, or acting in reaction to, complaints of protected activity.

Beginning, though, with the first factor, section 3(a) of Title VII defines "protected activity" as "oppos[ition] to any practice," or "participation in any manner in an investigation, proceeding, or hearing." *Id.* In considering whether a plaintiff's action constitutes "opposition activity" that would be protected, the Fourth Circuit has stated that "[o]pposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998); *see also id.* ("Whether an employee has engaged in protected opposition activity, turns upon balancing 'the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress's equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.'") (ellipsis in original). Objecting to age-based discrimination does not constitute protected activity under Title VII, because, as described above, Title VII is not implicated by age discrimination. *See Faulconer v. Centra Health, Inc.*, 808 Fed. Appx. 148, 153

(4th Cir. 2020) ("[I]t is well-established that a Title VII retaliation claim may not be 'based on an employer's adverse response to [] ADEA-protected conduct.'") (internal quotation omitted); *see also Lennon v. Rubin*, 166 F.3d 6, 8 (1st Cir. 1999); *Bornholdt v. Brady*, 869 F.2d 57, 62 (2d Cir. 1989).

In her Complaint, Moore alleges, "Retaliation has occurred by being denied interviews for positions where Plaintiff had clearly met the eligibility requirements." ECF 1 ¶ 31. She alleges that she raised both age and race discrimination in an internal EEO Complaint on July 17, 2015. *Id.* ¶ 13. The evidentiary record reflects, though, that her internal complaint on July 17, 2015 alleged discrimination based solely on age, not race, and was later amended (on some unspecified date) to include retaliation. ECF 40-3 at 28. Any retaliation resulting from an age discrimination complaint would not be cognizable under title VII.[3]

What is more, Moore has failed to provide the requisite specifics—in terms of dates, demographic details, and the knowledge of relevant decisionmakers—to establish a question of material fact as to retaliation. She was interviewed for Manager-School Operations Support after July 17, 2015, but the job was awarded to a new applicant, Harold Henry, whose race and qualifications are unspecified. Moore generally alleges that, after she filed her complaint, "I continued to be denied positions for which I was the most qualified applicant. In some instances, I was not even interviewed for positions for which I had applied and was inarguably highly

---

[3] From the record before the Court, it is clear that in Moore's EEOC submission on March 1, 2016, she raised both race discrimination in violation of Title VII and age discrimination in violation of the Age Discrimination in Employment Act. ECF 40-3. However, the only specific incident she describes as having occurred after that date is roughly a year later, in March, 2017, when she interviewed to be an Educational Associate. ECF 40-3 at 13. She does not name the decisionmaker for that 2017 position and does not indicate whether that decisionmaker knew of her EEOC submission the prior year. The evidentiary record, then, is quite poor, and is insufficient to establish a question of fact as to retaliation as to this EEOC submission.

qualified, in violation of policy requiring that all qualified applicants be interviewed." ECF 40-3 at 12 ¶ 21. She has not provided any dates for the interviews she alleges to have been denied, nor has she supplied information about the relevant decisionmakers and whether they were aware of her EEO complaint.

Accordingly, even assuming that Moore had sufficiently established that she engaged in protected activity by reporting race discrimination (which she has not, given the lack of evidence of an internal complaint based on anything other than age), she fails to adduce any evidence of a connection between that activity and any interviewing or hiring decisions by BCBSC. In the absence of other evidence of causality, "the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Moore has not even established temporal proximity due to the lack of dates in the record. Accordingly, summary judgment for BCBSC is justified on Count III.

### C. Intentional Infliction of Emotional Distress

Finally, Moore asserts a claim for intentional infliction of emotional distress under Maryland law. ECF 1 ¶¶ 33-36. She cites three acts of "intentional and extreme and outrageous behavior:" the denial of offers of employment despite her qualifications for the positions; the denial of interviews where she met eligibility requirements; and other inaction by the EEO office. *Id.* ¶¶ 35-36. The elements of a Maryland claim for intentional infliction of emotional distress are: (1) that the conduct in question was intentional or reckless; (2) that the conduct was extreme and outrageous; (3) that there was a causal connection between the conduct and the emotional distress; and (4) that the emotional distress was severe. *See Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977). Under Maryland law, "the tort of intentional infliction of emotional distress is rarely viable." *Farasat v. Paulikas*, 32 F.Supp.2d 244, 247 (D. Md. 1997). A plaintiff must plead and prove each

element with specificity. *See Foor v. Juvenile Serv. Admin.*, 78 Md.App. 151, 552 A.2d 947, 959 (1989) ("Bald and conclusory allegations will not suffice").

Intentional infliction of emotional distress is not a tort to be widely invoked. In fact, Maryland courts have cautioned that the tort of intentional infliction of emotional distress should be imposed sparingly, and "its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Figueiredo–Torres v. Nickel*, 321 Md. 642, 653, 584 A.2d 69, 75 (1991) (citations omitted); *see also Solis v. Prince George's County*, 153 F. Supp. 2d 793, 804–08 (D. Md. 2001). Moreover, even demonstrating a defendant's intent to cause emotional distress is insufficient. "If a defendant intends to cause a plaintiff emotional distress and succeeds in doing so, the defendant is nonetheless *not* liable unless his or her conduct is also extreme and outrageous." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670-71 (1992) (emphasis in original). Liability accrues only "for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. The requirements of the rule are rigorous, and very difficult to satisfy." *Id.* at 670.

Summary judgment is appropriate as to this claim, because even viewing the facts in the light most favorable to Moore, BCBSC's hiring conduct did not exceed "all bounds usually tolerated by decent society." Moore has not proffered any evidence to suggest that BCBSC calculated its actions to cause her very serious mental distress, nor any evidence to substantiate that she did in fact suffer "severely disabling" distress. *Harris v. Jones*, 281 Md. 560, 566 (1977); *see, e.g.*, ECF 40-1 at 11 (Moore summarizing her emotional damages as having "suffered from self-esteem, lack of confidence and bouts of depression."); *Id.* at 11-12 (reflecting no treatment

from psychologists or psychiatrists).  Summary judgment, then, is also appropriate as to Count Four.

## IV. CONCLUSION

For the reasons set forth above, BCBSC's Motion for Summary Judgment, ECF 39, will be GRANTED IN PART and DENIED IN PART.  Summary judgment will be entered for BCBSC as to Counts Two, Three, and Four, and denied as to Count One, as described herein.  A separate implementing Order follows.

Dated:  November 30, 2020                                                         /s/
                                                                       Stephanie A. Gallagher
                                                                       United States District Judge